699 So.2d 1058 (1997)
The STATE of Louisiana, William Kimball, H.M. Kimball, and Elizabeth Kimball Lewis, Individually and as Representatives of a Class of Those Similarly Situated
v.
SPRINT COMMUNICATIONS COMPANY, L.P., et al.
No. 96-CC-3094.
Supreme Court of Louisiana.
September 9, 1997.
*1059 Henry D. Salassi, Jr., John F. Olinde, H. Evan Scobee, Charles P. Blanchard, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans; James P. Dore, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton *1060 Rouge; M. Lizabeth Talbott, Lamothe & Hamilton, New Orleans; Galen S. Brown, New Orleans, for Applicant.
Patrick W. Pendley, Victor L. Marcello, Talbot, Carmouche, Marchand & Marcello, Plaquemine; Robert H. Carpenter, Jr., Baton Rouge, Richard P. Ieyoub, Attorney General, Allen J. Myles, Myles & Myles, Plaquemine; Damon A. Dunn, St. Amant, Michael R. Mangham, Louis R. Davis, Layafette, Claire A. Fisher, for Respondent.
Eric Shuman, New Orleans, for amicus curiae, Harbison Walker Refractories Company.
Michael R. Sistrunk, Mark E. Hanna, Metairie, for amicus curiae Owens-Corning Fiberglass, and W. R. Grace & Company.
Elizabeth R. Schick, Peter A. Kraus, Columbus, OH, David V. Denny, Metairie, for amici curiae, Willis Jude Batiste, Sr., Barbara Clay Batiste, Lamar Golmoan, Marie C. Golmoan, Leroy J. Portal, Berine Stewart, Sr., Sadie L. Stewart.
TRAYLOR, Justice.
We granted writs to review the Louisiana procedural rules for random assignment of cases. Specifically, we examined the validity of an interdivisional non-random transfer. We hold the 18th Judicial District Court's interdivisional transfer of the WilTel and Sprint lawsuits for judicial economy and case management violates La.Code Civ. Proc. art. 253.1, Local Rule 9 and public policy. Cases should be assigned and heard on a fair and impartial basis. District courts must adhere to their own rules, to the Code of Civil Procedure and to equity. Moreover, the requirement of random assignment of cases neither unduly burdens the divisions of the district courts nor impermissibly interferes with a district court's inherent powers. Accordingly, the decisions of the First Circuit Court of Appeal and the 18th judicial district court are reversed and set aside. Both suits are to proceed before Division "C" of the 18th Judicial District Court, to which they were originally randomly allotted.

FACTS AND PROCEDURAL HISTORY
In October 1994, the plaintiffs filed two separate class action lawsuits in the 18th Judicial District, West Baton Rouge Parish. The first suit, entitled "State of Louisiana, XCL Ltd., William Kimball, et al., individually and as representatives of a class of those similarly situated v. WilTel, Inc., and WilTel Communications," No. 26,304, was filed on October 5, 1994 (the "WilTel Suit"). The second suit is entitled "State of Louisiana, William Kimball, et al., individually and as a representative of a class of those similarly situated v. Sprint Communications Company, et al.," No. 26,334, and was filed only three weeks later (the "Sprint Suit"). The Clerk of the 18th Judicial District Court randomly allotted each suit to Division C, where the Honorable Sharah H. Mulmore presides.
On July 20 and 24, 1995, Judge Jack T. Marionneaux of Division "D" and Judge Sharah Mulmore of Division "C," respectively, signed an order transferring the WilTel suit from Division C to Division D. The order stated this transfer was in the "best interest of judicial economy and case management." WilTel opposed the transfer of its suit and filed a motion to vacate. On September 20, 1995, counsel for Sprint and MCI received notice of the above order and an order consolidating the Sprint case with the WilTel suit in Division D. The Sprint suit had not been transferred to Division D. Sprint and MCI filed a motion to vacate or rescind the transfer and consolidation. The consolidation order was recalled by Judge Marionneaux on November 7, 1995.
On February 26, 1996, Judge Mulmore conducted a hearing on the motion to vacate the transfer of the WilTel suit from Division C to Division D. Counsel for Sprint and MCI appeared and participated in the hearing. Judge Marionneaux testified that although the local rules of the 18th Judicial District Court had been violated, this transfer was "routine" and done because he was more experienced in class action lawsuits. The Clerk of Court testified the transfer was not random. Nonetheless, Judge Mulmore denied the motion and on March 1, 1996, signed an order decreeing the WilTel suit had been validly transferred and would remain in Division D.
Shortly after the denial of the motion to vacate, plaintiffs moved to transfer the *1061 Sprint suit to Division D. Judge Mulmore heard the motion on May 7, 1996. At that hearing, the Clerk of Court testified neither division had requested nor been provided with statistics regarding the number or backload of cases each possessed. Moreover, he was not instructed to transfer a number of cases due to overcrowding nor to transfer all asbestos cases to Judge Marionneaux. Hence, Sprint established the transfer did not occur as a result of overcrowded dockets. Moreover, exhibits were introduced to show Judge Marionneaux's interest in receiving all class action asbestos cases. On May 8, 1996, Judge Mulmore granted the transfer of the Sprint suit. Sprint and MCI were granted devolutive appeals from the March 1 and May 8 orders. A suspensive appeal from the latter order was denied. Plaintiffs moved to consolidate both suits in Division D. Judge Marionneaux denied motions for continuances and Sprint's and MCI's requests for a stay of all non-discovery matters. Sprint and MCI filed an application for supervisory writs from the denial of the stay which the First Circuit denied and this court unanimously granted. On September 13, 1996, this court issued the following per curiam:
La.Code Civ. Proc. art. 253.1 requires the assignment of pleadings to various divisions of the district court by random allotment. The ruling on the alleged violation of this article by means of a nonrandom transfer of cases from one division to another is the subject of an alternative appeal/application for supervisory writs which is pending in the court of appeal.
The present application for supervisory writs involves the trial court's denial of a stay of all non-discovery matters pending disposition by the court of appeal of the appeal/supervisory writ challenging the transfer orders. Because the rulings on the transfer issue cannot as a practical matter be corrected on appeal and were arguably incorrect, relator is entitled to have the court of appeal rule under its supervisory jurisdiction on the merits of the transfer issue. See Herlitz Constr. Co. v. Hotel Investors of New Iberia, 396 So.2d 878 (La.1981). Moreover, nondiscovery matters should be stayed until the court of appeal rules on the merits of the transfer issue.
Accordingly, the rulings of the lower court are set aside, and the court of appeal is ordered to stay all non-discovery matters in this action until the court of appeal rules expeditiously on the merits of the transfer issue which should be considered under the court's supervisory jurisdiction.
On September 18, 1996, the First Circuit issued a stay of all non-discovery matters pending resolution of the transfer issue and requested a new writ application. The First Circuit denied the writ, stating in part, "A court's non-random transfer of a case from one division to another for reasons of judicial economy and case management does not violate the requirements of Code Article 253.1."[1]

LAW AND DISCUSSION
Applicants contend the 18th Judicial District Court erred in transferring the Sprint and WilTel suits from Division C to Division D for "judicial economy and case management." We agree and hold these transfers violated La.Code Civ. Proc. art. 253.1, Local Rule 9 and public policy and therefore cannot stand.
La.Code Civ. Proc. art. 253.1 was recently enacted to provide for the random assignment of cases to particular divisions of district courts by various means. Article 253.1 states:
All pleadings filed shall be randomly assigned to a particular section or division of the court by either of the following methods:
(1) By drawing indiscriminately from a pool containing designations of all sections or divisions of court in the particular jurisdiction in which the case is filed.
(2) By use of a properly programmed electronic device or computer programmed to randomly assign cases to any one of the *1062 sections or divisions of court in the particular jurisdiction in which the case is filed.
Effective since August 15, 1995, this statute expresses the legislative mandate to end the practice of non-random assignment. The statute is clear and unambiguous. The requirement to randomly assign must apply to the transfer as well as the initial allotment of cases to deter attempts to manipulate the assignment of lawsuits. Here, the initial assignments of the cases at issue were random, in compliance with article 253.1 and therefore proper. The subsequent transfers, however, were not. The fact that case swapping is routinely done in this district does not justify nor legitimize it. The decision to disturb the equitable distribution of assignments should not be made lightly. Judges cannot decide to accept or reject cases unless a valid reason for recusation exists. The words "random assignment" necessitate the statute's application beyond the initial procedures employed by the clerk of court. When clear and unambiguous, laws are to be interpreted and applied as written. La. Civ.Code art. 9. If a case is transferred to another judge shortly after being randomly assigned, then it was not truly randomly assigned. To do so would defeat the purpose of the statute and render it meaningless. Additionally, no valid reason has been shown for the interdivisional transfer of the cases at issue.[2]
We hold the judges of the 18th Judicial District Court cannot be permitted to continue the practice of non-randomly swapping cases originally allotted to them by chance. Just as a litigant may not choose a courtroom or a judge, a judge may not select his caseload or his litigants. This statute was enacted to facilitate meaningful random assignment. We hold transfers that permit judges to circumvent the random allotment process to funnel particular types of cases to one judge violate the spirit and purpose of La.Code Civ. Proc. art. 253.1.
We next address the 18th Judicial District Court's local rules. Specifically, Local Rule 9 requires the random allotment of civil cases among its divisions within each parish:
The allotment of civil cases shall be made by the Clerk of Court of each parish based on an exact record to be kept by the Clerk showing the date suit was filed and the date to each Division of Court.
Cases will be allocated in rotation by the Clerk of Court. Each Clerk of Court will prepare three (3) months in advance, a staggered allotment system which will be inspected by the Judges periodically. The system will be kept in a locked vault and not permitted for viewing by any attorney or litigant and shall be under the safekeeping of the Clerk of Court and his assigned authorized deputy clerk.
Rule 9 contains safeguards to prevent litigants from having advance notice of the rotation system. This staggered or random system exists to disallow the practice of "Judgeshopping." As Rule 9 further provides, this random procedure likewise applies to the transfer of cases between divisions:
Cases will not be transferred from one division to another without the joint consent of the Judges concerned, nor shall there ever be any allotment of cases by alternating from the consecutive order herein designated. When one Judge recuses himself for good cause, the case shall be allotted to the next Judge and the Judge who recuses himself shall be assigned an additional case. This will be shown by accurate record on the staggered system.
A plain reading of Rule 9 mandates the requirement of random assignment apply to the transfer as well as the initial assignment of cases. If a transfer is necessary, the Clerk of Court should randomly reassign the case.
In the instant case, the record shows the transfers of the WilTel and Sprint suits were not random. They were deliberate and contrary to the consecutive order designated by Rule 9. Moreover, Rule 9 requires when a judge recuses himself or herself, the case is *1063 allotted to another judge under the "staggered" random selection procedure. The Clerk of Court testified that the 18th Judicial District Court currently employs a computerized random allotment procedure which could be used to randomly transfer a case from one division to another. The means existed to comply with Rule 9. This total disregard of the law under the guise of "judicial economy and case management" warranted our review. No justification has been offered to legitimize the transfers. We find the interdivisional transfers violated Rule 9 and are therefore void and unenforceable.
Furthermore, random assignment procedures promote fairness and impartiality and reduce the dangers of favoritism and bias. Unless a valid ground for recusal exists, every elected judge of a district court is authorized to hear any case randomly assigned to him or her within the court's jurisdiction, regardless of the type of case. No single judge sitting in a district court has the right or prerogative to try class action suits, maritime cases, medical malpractice claims, or any other particular type of litigation to the exclusion of other judges on the same court to whom the cases are randomly assigned.[3] Random assignment becomes meaningless if judges can routinely transfer cases between themselves on a non-random basis. Ex parte non-random transfers allow plaintiffs or defendants to pick the division of their choice, an act which we hold is barred by the aforementioned statute, local rule and public policy.
Additionally, on July 10, 1997, the Governor signed House Bill 1228, effective August 15, 1997, which enacted La.Code Civ. Proc. art 253.2. Article 253.2 provides:
After a case has been assigned to a particular section or division of the court, it may not be transferred from one section or division to another section or division within the same court, unless agreed to by all parties, or unless it is being transferred to effect a consolidation for purpose of trial pursuant to Article 1561. However, the supreme court by rule, may establish uniform procedures for reassigning cases under circumstances where an expeditious disposition of cases may be effectuated.
The clear language in the above article leaves no doubt that the interdivisional transfers at issue would be improper under the new statute. In the instant case, the parties did not consent, the initial transfer was not for consolidation, and no Supreme Court rule permitted the transfers.
Because the interdivisional transfers before us are violative of both the previously written Article 253.1 and the newly enacted Article 253.2, we need not determine the retroactivity of the newly enacted statute at this time.

CONCLUSION
We hold the 18th Judicial District Court's system of transferring cases to other divisions of the same court on a nonrandom basis is improper and violative of La.Code Civ. Proc. Art. 253.1, Local Rule 9 of the 18th Judicial District Court and public policy. Swapping or transferring a case is impermissible where a judge simply feels uncomfortable with a lawyer, a party, or a particular type of litigation. Transfers that circumvent the random allotment process to funnel particular types of cases to one judge are similarly inappropriate and impermissible. A practice of case swapping among judges which permits non-random transfers after initial random allocation, encourages "judge shopping," which we have declared a problem. See State v. Neisler, 633 So.2d 1224, 1232 (La.1994) where we noted for guidance purposes, "[t]he criminal court should implement some sort of random allocation system designed to prevent `judgeshopping' and the appearance of favoritism." This concept is not unique to criminal law. We recognize a transfer between divisions may be necessitated to accommodate proper consolidation of cases. However, transfers necessitated by recusal, retirement or death of the judge to whom a case is allotted, or other rare and unavoidable circumstances warrant random assignment.
*1064 Moreover, our decision is codified by the recent enactment of La.Code Civ. Proc. art 253.2, discussed above.

DECREE
For the reasons expressed above, the decisions of the First Circuit Court of Appeal and the 18th Judicial District Court are hereby reversed and set aside. It is hereby ordered that the WilTel and Sprint suits proceed before Division "C" of the 18th Judicial District Court for the Parish of West Baton Rouge to which they were originally randomly assigned.
REVERSED.
KIMBALL, J., not on panel, recused. Rule IV, Part 2, § 3.
JOHNSON, J., concurs in the result.
CALOGERO, C.J., and LEMMON, J., concur and assign reasons.
CALOGERO, Chief Justice, concurring.
The majority concludes that Louisiana Code of Civil Procedure article 253.1 and Local Rule 9 impose a prohibition against the interdivisional transfer of cases between consenting judges. In reaching this conclusion, the majority postulates that if the "random assignment" requirement in article 253.1 did not apply to subsequent interdivisional transfers, as well as the initial allotment of cases, then the "purpose" of the statute would be defeated and the article would be rendered meaningless. Slip op. at 1062. With this, I do not agree.
Louisiana Code of Civil Procedure article 253.1, which is entitled "Pleadings; random assignment of cases," provides as follows:
All pleadings filed shall be randomly assigned to a particular section or division of the court by either of the following methods:
(1) By drawing indiscriminately from a pool containing designations of all sections or divisions of court in the particular jurisdiction in which the case is filed.
(2) By use of a properly programmed electronic device or computer programmed to randomly assign cases to any one of the sections or divisions of court in the particular jurisdiction in which the case is filed.
As I read the article, it says nothing, expressly or implicitly, about an interdivisional transfer after random assignment of a case to a particular section or division of a court. Rather, the article merely imposes a requirement that cases be randomly assigned to a particular section or division of the court and, additionally, provides the exclusive means by which this random assignment should be made.
In my view, one purpose of the "random assignment" requirement in article 253.1 is simply to ensure that the initial assignment of a case to a particular section or division of the court will occur without the possibility of interference or manipulation by a litigant or court official. The article also ensures that no single judge can direct the initial assignment of a particular case to his or her division, nor can he alone accomplish a subsequent interdivisional transfer of a case to his division, as such a transfer would require the consent of the judge to whom the case was initially assigned. These purposes are in no way defeated by interdivisional transfers to which the transferring judge and receiving judge agree.
The majority also contends that Local Rule 9 in the 18th Judicial District Court imposes a "random allotment" procedure that is applicable to the interdivisional transfer of cases. Again, I disagree. Rule 9 provides, in pertinent part, as follows:
The [staggered] allotment of civil cases shall be made by the Clerk of Court of each parish.... Cases will not be transferred from one division to another without the joint consent of the Judges concerned, nor shall there ever be any allotment of cases by alternating from the consecutive order herein designated. When one Judge recuses himself for good cause, the case shall be allotted to the next Judge and the Judge who recuses himself shall be assigned an additional case. This will be shown by accurate record on the staggered system.
The sole reference to transfers in Rule 9 states only that interdivisional transfers are impermissible "without the joint consent of *1065 the Judges concerned." The obvious implication of this statement is that interdivisional transfers with the consent of the judges concerned are permissible. Thus, as I read Rule 9, there is no prohibition against interdivisional transfers between consenting judges.
Therefore, in my view, the transfer at issue was entirely permissible under article 253.12 and Local Rule 9 when the transfer was made. However, I do recognize, as did the majority, that newly enacted Code of Civil Procedure article 253.2 does prohibit the interdivisional transfer at issue. Article 253.2, entitled "Transfer and reassignment of pending cases," prohibits the transfer of cases from one section or division to another, absent the consent of all parties, grounds for consolidation, or intervention by Supreme Court Rule. None of these exceptions are present in the instant case. In my view, the article is entirely procedural in nature. Civil Code article 6 directs that procedural laws be applied retroactively, unless there is a legislative expression to the contrary. Neither the text of the newly enacted article nor the body of the Act from which it spawned, La. Acts 1997, No. 968, contains any such "legislative expression to the contrary." Therefore, in my view, the article must be applied retroactively to the instant case to defeat the interdivisional transfer at issue.
For the reasons given above, I respectfully concur.
LEMMON, Justice, concurring.
Inasmuch as La.Code Civ. Proc. art. 253.1 by its terms only requires the random allotment of the initial petition,[1] the challenge to the interdivisional transfer in this case is not controlled by Article 253.1 as it read at the time of the transfer. However, after the argument in this case, the Legislature adopted La. Acts 1997, No. 968, which enacted La.Code Civ. Proc. art. 253.2 to prohibit the transfer of a randomly allotted case from one division to another within the same court unless agreed to by all parties.[2] Whether or not Act 968 can be applied to invalidate this transfer, it would be an exercise in futility to reach any decision in this case contrary to the majority's result.
I therefore concur in the judgment.
NOTES
[1] This was a two to one decision. Judge Shortess dissented and wrote that he would grant the writ.
[2] Article 253.1 does not affect the transfer of a case for purposes of consolidation. La.Code Civ. Proc. art. 1561 and Local Rule 9.2 expressly permit this procedure when one of the cases was randomly assigned to the transferee judge. However, neither the WilTel nor the Sprint lawsuits were ever randomly assigned to Judge Marionneaux.
[3] The Constitution and laws of this state allow the legislature and Supreme Court to create divisions and assign judges to hear certain cases. The legislature has enacted statutes to create criminal, juvenile, domestic and family divisions. See L.R.S. 13:587, 1136 et seq., 1561 et seq.
[1] Article 253.1 refers to "all pleadings," but answers, exceptions and motions after the initial petition obviously are not randomly allotted.
[2] Article 253.2 contains another exception for transfers to effect a consolidation under La.Code Civ. Proc. art. 1561, which was amended by La. Acts 1997, No. 968.