739 So.2d 874 (1999)
Betty Sue ROCK
v.
ATPIC TRUCKING CO., INC., GCSW Funding Group, Inc., and Garvis C. Wooley.
No. 98 CA 1420.
Court of Appeal of Louisiana, First Circuit.
June 25, 1999.
*875 Mark V. Marinoff, Baton Rouge, for Plaintiff/Appellee, Betty Sue Rock.
Ernest D. Van Purnell, Edselle K. Cunningham, Baton Rouge, Martin S. Sanders, Winnfield, for Defendants/Appellants, Atpic *876 Trucking Co., Inc., GCSW Funding Group, Inc., Garvis C. Wooley.
Before: CARTER, C.J., SHORTESS, and WHIPPLE, JJ.
CARTER, C.J.
Defendants, ATPIC Trucking, Inc. (ATPIC), GCSW Funding Group, Inc. (GCSW), and Garvis C. "Sonny" Wooley (Wooley), appeal from a judgment rendered in favor of plaintiff, Betty Sue Rock (Rock). The judgment was rendered at the conclusion of a trial at which neither defendants nor their counsel was present. Defendants filed a motion for new trial which was denied.

FACTUAL BACKGROUND
In 1992, Rock owned stock in ATPIC. In November 1992, Rock conveyed all of her interest in ATPIC stock to GCSW and Wooley. The purpose of this conveyance was to enable Wooley and others to enter into and operate a trucking business in Louisiana. Subsequently, ATPIC and Rock entered into a written agreement whereby Rock agreed to serve ATPIC as an independent contractor. The agreement contained a four-year term and provided that Rock would be compensated at the rate of $2,000 per month, payable on the first of each month. Shortly after the contract went into effect, ATPIC defaulted by failing to make compensation payments to Rock.

PROCEDURAL HISTORY
In April 1995, Rock filed suit against defendants, ATPIC and GCSW, seeking damages for breach of the independent contractor agreement between Rock and ATPIC. GCSW and ATPIC answered Rock's petition on April 28, 1995, through attorney Martin S. Sanders, Jr. (Sanders). A Case Management Schedule was issued on December 17, 1996, setting discovery and other pre-trial deadlines. Through this schedule, the case was assigned for a jury trial on November 12, 1997. Additionally, the parties were given a "second setting" trial date of April 21, 1997.[1] The Case Management Schedule reflects that Martin Sanders, counsel for ATPIC and GCSW, was absent, and his absence was "unexplained."
Pursuant to the "second setting" trial date, the matter came on for trial on April 21, 1997; however, defendants ATPIC and GCSW, as well as their counsel, failed to appear for the trial. Since neither defendants nor opposing counsel appeared, and as a courtesy to opposing counsel, Rock moved for a continuance, pursuant to which the trial court continued the trial until the "first setting" trial date of November 12, 1997.
On August 21, plaintiff filed a motion for leave of court to supplement her petition, alleging that she "recently discovered new evidence which supports supplementing her petition to add as a named party defendant... Wooley ...." Pursuant to the trial court order granting Rock leave of court to supplement her petition, Rock filed a supplemental and amending petition adding Wooley as a defendant. Through this supplemental petition, plaintiff alleged that Wooley acted as the alter ego of GCSW and had "completely disregarded the corporate entity (GCSW ...) to such an extent that the corporation [was] actually indistinguishable from Wooley." On September 11, 1997, Wooley's counsel, Ernest D. Van Purnell (Van Purnell), obtained a thirty-day extension of time within which to file an answer to the petition. Subsequently, on October 14, Van Purnell filed a motion to enroll as counsel of record in the suit by Rock against defendants. The trial court ordered that Van Purnell be entered into record as counsel for Wooley. *877 Van Purnell also filed an answer to the supplemental and amending petition on behalf of Wooley.
The matter came up for trial as scheduled on November 12, 1997; however, none of the defendants or their counsel appeared at the trial. After presentation of the plaintiff's case, the trial court rendered judgment in favor of Rock and against the defendants in the amount of $90,000, plus legal interest. Wooley subsequently filed a motion for new trial through Van Purnell, alleging that Van Purnell was only recently retained to represent Wooley, ATPIC and GCSW; and that Sanders, defendants' original counsel, was incapacitated by a stroke suffered in December 1996, which stroke rendered Sanders unable to defend this claim. Finally, defendants alleged that their counsel was not informed or notified and had no knowledge that a trial was to be held on November 12, 1997; thus, they made no appearance. The motion for new trial was denied. Defendants appealed.[2]
In their appeal, defendants raise three issues for our review.[3] The first issue is whether Wooley was deprived of his right to due process when neither he nor his counsel of record received notice of trial as required by LSA-C.C.P. art. 1571 and Rules VI, § 2(C) and VII of the Nineteenth Judicial District Court, and a judgment was entered against him. Second, defendants question whether the trial court's rendering of a judgment in favor of plaintiff based upon the "alter ego doctrine" was contrary to the law and evidence given the lack of substantiated, unbiased evidence presented, the substantial burden of proof required to disregard the corporate entity and impute personal liability on a shareholder, and the failure of the plaintiff to meet the required burden of proof. The third issue raised by defendants is whether the trial court, in denying the motion for new trial, abused its discretion given the facts that the original counsel of record was physically and mentally incapacitated by a documented medical condition prior to trial, the condition was not discovered by the appellants and/or present counsel until after the trial, and the importance of notice in procedural due process.

DENIAL OF MOTION FOR NEW TRIAL
Wooley asserts the trial court abused its discretion in not granting a new trial. Wooley does not allege any of the peremptory grounds for the granting of a new trial. See LSA-C.C.P. art.1972. However, a new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. LSA-C.C.P. art.1973. The trial judge has much discretion in determining whether to grant a motion for new trial. See LSA-C.C.P. art.1971. The denial of a motion for new trial should not be reversed unless there has been an abuse of that discretion. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, p. 44 (La.App. 1st Cir.3/11/94); 634 So.2d 466, 493, writ denied, 94-0906 (La.6/17/94); 638 So.2d 1094.
Wooley contends that he was entitled to a new trial because his attorney did not receive notice of the assignment of Rock's case for trial. According to Wooley, this lack of notice violated his procedural due process rights and LSA-C.C.P. art. 1571. Due process at a minimum *878 requires that deprivation of life, liberty or property be preceded by notice and an opportunity to be heard at a meaningful time. The notice given must be reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Zachary Taylor Post No. 3784 v. Riley, 481 So.2d 699, 701 (La.App. 1st Cir.1985).
LSA-C.C.P. art. 1571 mandates that district courts prescribe the procedure for assigning cases for trial by rules which "[r]equire adequate notice of trial to all parties." The Rules of the Nineteenth Judicial District Court also address how notice of trial date assignments is to be provided. Rule VI, § 2(C) requires the Clerk of Court, or one of his deputies, to mail a written notice of said assignment to counsel for all parties, as well as to every party thereto not represented by counsel. This notice must be mailed within one judicial day after any assignment is made. Rule VII sets forth the pretrial procedure for civil cases. Section 1 provides that "no suit requiring a trial on the merits may be assigned except at pretrial conference." The rule describes how to request and obtain a trial assignment through a pretrial order; however, when good cause exists, section 8 grants the court the authority to waive all or any part of the requirements of Rule VII and assign a case for trial upon the merits.
A clerk of court fulfills its obligation of providing notice when it sends notice to the attorneys of record at the time the notice is generated. See Guidry v. Lafayette Building Association, 93-1302, p. 3 (La.App. 3rd Cir.5/4/94); 640 So.2d 436, 438. It is the obligation of the attorney and not the clerk to have the court recognize him or her as the attorney of record for a litigant. Guidry, 640 So.2d at 438; Coleman E. Adler & Sons, Inc. v. Waggoner, 538 So.2d 1131, 1132-33 (La. App. 5th Cir.1989). Moreover, there is no obligation on opposing counsel to notify the opponent of the trial date. Coleman, 538 So.2d at 1133.
After a review of the record, we find that the trial court complied with the provisions of LSA-C.C.P. art. 1571 and the Rules of the Nineteenth Judicial District Court. The trial court issued a Case Management Schedule through which Rock's case was assigned for trial. There is no evidence to show that notice of this trial date assignment and Case Management Schedule was not mailed to Sanders, as counsel of record for the defendants ATPIC and GCSW, the only defendants involved in the litigation at the time the case was assigned for trial. Particularly, Wooley was not a party to the litigation at the time the Case Management Schedule was issued. Accordingly, the clerk and/or district court had no obligation to send notice of the trial assignment to Wooley or his counsel, Van Purnell.
Van Purnell enrolled as counsel of record for Wooley after Wooley was served with the supplemental and amending petition. This took place after the trial date(s) had been set in the Case Management Schedule. As previously noted, the record lacks evidence which establishes that Sanders did not receive notice of the trial date(s). Moreover, the record does not contain a Request for Notice filed by Van Purnell on behalf of Wooley or the other defendants.[4]
Without filing a Request for Notice, it was clearly the duty of Wooley's counsel, *879 Van Purnell, to inquire about the procedural posture of the ongoing litigation against Wooley and the other defendants when Wooley was named as a co-defendant through a supplemental and amending petition. See Coleman, 538 So.2d at 1132. Moreover, by Wooley's own admission, he was unable to get in touch with Sanders regarding the status of the ongoing litigation. Despite this fact, the record reveals that once Van Purnell was engaged as counsel of record for Wooley, ATPIC, and GCSW, his only actions were to obtain from plaintiff's counsel an extension of time in which to file responsive pleadings, file a formal motion to enroll as counsel, and then file an answer to the supplemental and amending petition. He made no effort to contact the clerk's office to determine the status of, and what actions had already been taken with respect to, the ongoing litigation. The record is also void of any evidence that Van Purnell attempted to contact Rock's counsel or the Clerk of Court about the procedural posture of the ongoing litigation. Under these circumstances, we cannot say that it was the trial court's or clerk's duty to inform Van Purnell (attorney for all the defendants) of the trial date which had been set and properly noticed before Van Purnell became an attorney of record.
An attorney owes his clients the duty of diligent investigation and research upon being hired for representation, especially in ongoing litigation. See Prestage v. Clark, 97-0524, p. 9 (La.App. 1st Cir.12/28/98); 723 So.2d 1086, 1091, writ denied, 99-0234 (La.3/26/99); 739 So.2d 800. When a failure to properly defend an action is directly attributable to the defendants' or their attorney's negligence, no new trial is warranted. Accordingly, Wooley's due process rights were not violated by his failure to receive notice of the November 12 trial, and the trial court did not abuse its discretion in denying defendants' motion for new trial.

PERSONAL LIABILITY OF WOOLEY
Wooley was named as a defendant based upon allegations that the default on the agreement between Rock and Wooley occurred while Wooley was "acting as the alter ego of other corporate defendants made parties hereto." In rendering judgment against Wooley individually, the trial court inherently found that the evidence presented by Rock was sufficient to warrant "piercing the corporate veil" to hold an individual shareholder liable for debts of the corporation. Wooley contends that this finding was erroneous.
The law governing shareholder liability for corporate debts was extensively set forth in McDonough Marine Service, a Division of Marmac Corporation v. Doucet, 95-2087 (La.App. 1st Cir.6/28/96); 694 So.2d 305, as follows:
The statutes and jurisprudence are clear that shareholders of corporations are not responsible for the debts of the corporation. As a general rule, corporations are distinct legal entities, separate from the individuals who comprise them, and individual shareholders are not liable for the debts of the corporation. What is due to a corporation is not due to any of the individuals who compose it, or vice versa, and a creditor of a corporation cannot compel any of its members to pay what may be due him by the corporation.
. . . .
There are exceptions to the rule of non-liability of shareholders for the debts of a corporation whereby the court may ignore the corporate fiction and hold the individual liable. Louisiana courts have allowed the piercing of the corporate veil under only two exceptional circumstances, namely where the shareholders acting through the corporation commit fraud or deceit on a third party and where the shareholders have failed to conduct the business on a corporate footing, disregarding the corporate entity to such extent that they and it become indistinguishable.

*880 Where fraud or deceit has been practiced on a third party by the shareholder acting through the corporation, the courts have disregarded the corporate entity and imposed personal liability for those debts upon the shareholder....
In the second situation, the corporation is referred to as the "instrumentality" or "alter ego" of the members. The corporate veil may be pierced, even in the absence of fraud, where there has been a disregard of the corporate entity to such an extent that the corporation is indistinguishable from the shareholders. In other words, when the members fail to conduct a corporation on a separate footing, the court may ignore the corporate entity and hold individual members liable to third parties. In such situations, a litigant can reach an individual shareholder by "piercing the corporate veil," thereby rendering the individual liable for the debts incurred by the corporation.
Louisiana courts have listed the following circumstances which, when viewed as part of the total circumstances in each individual case, justify the imposition of the alter ego doctrine:
1) commingling of corporate and shareholder funds,
2) failure to follow statutory formalities required for incorporation and for the transaction of corporate affairs,
3) undercapitalization,
4) failure to provide separate bank accounts and bookkeeping records, and
5) failure to hold regular shareholder or director meetings.
In applying the principle of corporate immunity, the shareholders or members have the initial burden of showing the corporate existence, and defendants carry this burden by use of the corporate charter and other documents. The burden then shifts to the plaintiff to show the exceptional circumstances which must exist in order for the corporate veil to be pierced and individual shareholders or members held liable for a corporate debt.
The determination of whether the shareholders have failed to conduct the corporation's business on a corporate footing is to be based on a totality of the circumstances. In the absence of fraud or deceit, other circumstances must be so strong as to clearly indicate that the corporation and shareholder(s) operated as one. Because Louisiana considers the concept of the corporation beneficial, the principle that the corporation is a separate entity should be disregarded only in exceptional circumstances. Whether individual liability will be assigned to shareholders is primarily a factual finding to be made by the trial court.
McDonough, 694 So.2d at 308-10 (citations omitted). Accordingly, the trial court's finding that Wooley was liable for the debts of ATPIC and GCSW can be reversed only if this court finds from the record that a reasonable factual basis does not exist for the finding, and the record establishes that the finding is clearly wrong/manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
After a thorough review of the record, we find that a reasonable factual basis exists for the trial court's imposition of liability upon Wooley. Rock testified that Wooley approached her on behalf of ATPIC, and asked if she would work for ATPIC as a consultant on the trucking business. Rock agreed, and the parties executed the "Independent Contractor Agreement." As previously stated, this agreement provided that Rock would be compensated at the rate of $2,000 per month, payable in full on the first day of each month. The first payment due to Rock under the contract was late. The second payment was late and made in two installments. The third payment due under the agreement was paid in cash. Particularly, with respect to the third payment owed under the agreement, Wooley gave *881 cash to an employee of ATPIC, directing the employee to give the cash to Rock. After the third payment, Rock did not receive any more payments under the agreement.
An employee of ATPIC, Michael Rock, also testified at the trial. Mr. Rock was the secretary-treasurer of ATPIC at the time Rock entered into the contract with ATPIC. Mr. Rock was responsible for paying the bills of ATPIC. Wooley was the owner of all of the stock in ATPIC at the time. Mr. Rock testified that Wooley owned "several businesses" and was giving Mr. Rock money from other business accounts to pay bills of ATPIC. Similarly, Wooley occasionally would take money from ATPIC to pay personal bills. In his experience as secretary-treasurer of ATPIC, Mr. Rock was familiar with the practices of Wooley commingling various accounts for other corporations with ATPIC's account. Mr. Rock concluded that Wooley was the "alter ego" of ATPIC. When Mr. Rock left the employ of ATPIC a few months after the last payment was made to Rock, ATPIC was still in business; however, at the time of trial, Mr. Rock did not believe ATPIC was still in business. Finally, Mr. Rock testified that Wooley owned several companies and when he was done with a company, "[Wooley] just walked away from it."
In light of this testimony, we cannot say the trial court was clearly wrong in piercing the corporate veil and finding Wooley personally liable for the debts of ATPIC. Based on a totality of the circumstances, the trial court could have found that there was commingling of ATPIC and shareholder funds and/or that ATPIC was undercapitalized. Accordingly, the judgment against Wooley, in favor of Rock, was proper.

CONCLUSION
For the reasons set forth in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellants.
AFFIRMED.
SHORTESS, J., dissents with reasons.
SHORTESS, J., dissenting.
The issue herein is whether defendant received adequate notice of trial to satisfy the requirements of due process. Procedural due process includes the right to both notice of trial and a fair trial.[1] The Louisiana Code of Civil Procedure requires district courts to promulgate rules that provide adequate notice of trial to all parties.[2] The rules of the Nineteenth Judicial District Court provide for such notice, but those rules are ineffective where, as here, the petition is amended to add a party after the pretrial conference is held. The local rules do not contemplate such an event because the attorney requesting a pretrial conference and trial setting must certify "that all known ... pleadings, including all amended pleadings have been filed and appear of record."[3]
The majority concedes Van Purnell received no notice whatsoever, and the record is devoid of evidence that Sanders received notice. It holds, however, that "the clerk and/or district court had no obligation to send notice of the trial assignment to Wooley or his counsel, Van Purnell" because "Wooley was not a party ... at the time the Case Management Schedule was issued." While the district court may have complied with the letter of the local rules, it has failed to comply with the spirit of the Constitution. In my opinion, the lack of notice of trial in this case *882 deprived defendants of their constitutional right to due process.
I respectfully dissent.
NOTES
[1] A "second setting" is a scheduling tool utilized by some district courts to avoid the downtime that can result when a case settles shortly before its scheduled trial date. Thus, a "second setting" will take the place of the "first setting" case if the "first setting" case settles prior to the trial date.
[2] Initially, defendants filed an application for supervisory writs in response to the trial court's denial of the motion for new trial. This court denied the writ noting: "The trial court's judgment on the merits became a final, appealable judgment with the denial of relators' motion for a new trial. The denial of the motion for new trial can be raised as part of the appeal of the judgment on the merits." Rock v. ATPIC Trucking, Inc., 98-0514 (La. App. 1st Cir.3/19/98) (unpublished).
[3] We note that the motion for appeal was signed by Van Purnell on behalf of all three defendants. However, the issues presented for review pertain only to the trial court's actions which affected the rights of defendant, Wooley.
[4] LSA-C.C.P. art. 1572 provides in pertinent part as follows:

The clerk shall give written notice of the date of the trial whenever a written request therefor is filed in the record or is made by registered mail by a party or counsel of record. This notice shall be mailed by the clerk, by certified mail, properly stamped and addressed, at least ten days before the date fixed for the trial.
Thus, absent the filing of a written request for notice of trial, Van Purnell could not have reasonably expected to receive notice of the date of the trial which had been assigned prior to his client, Wooley, being named as a defendant.
[1] Jones v. United States Fidelity, 596 So.2d 834, 836 (La.App. 4th Cir.1992).
[2] La. C.C.P. art. 1571(A)(1)(a).
[3] Rule VII(2)(A), Civil Rules of the Nineteenth Judicial District Court.