803 So.2d 445 (2001)
WSF, INC.,
v.
Leon CARTER, Jr., et al.
Leon Carter, et ux., Plaintiffs/Appellants,
v.
Huddleston Land Services, Inc., et al., Defendants/Appellees.
Nos. 35,581-CA, 35,582-CA.
Court of Appeal of Louisiana, Second Circuit.
December 28, 2001.
*447 Leon Carter, Jr., Joanne Morris Carter, Pro Se Appellants.
Shuey, Smith, Reynolds & Rios, L.L.C. by John M. Shuey, Jr., Shreveport, Counsel for Appellees.
Before NORRIS, PEATROSS & KOSTELKA, JJ.
PEATROSS, J.
This consolidated appeal arises out of a concursus proceeding to determine the rights to certain mineral royalty interests and a suit for damages filed by Plaintiffs Joanne and Leon Carter (also defendants in concursus) against Defendant Huddleston Land Services, Inc. ("Huddleston"). The trial court rendered judgment in favor of Huddleston. The Carters, proceeding pro se, appeal, asserting five assignments of error. For the reasons stated herein, we affirm.

FACTS
Joanne and Leon Carter owned certain mineral royalty interests in land located in Bossier Parish, Louisiana. They owned an interest in community and Mrs. Carter owned a separate interest. Gerald Huddleston of Huddleston Land Services, Inc. contacted the Carters about purchasing their royalty interests and sent them a form deed in the mail. The Carters agreed to sell both the community and Mrs. Carter's separate interest and executed a Royalty Conveyance Deed on August 31, 1999, which was recorded on September 9, 1999. Subsequently, some confusion arose as to Mrs. Carter's separate interest; and, during various conversations, Huddleston and the Carters agreed that Huddleston would only purchase the community interest and that the executed deed was sufficient to accomplish that end. Apparently, however, the Carters became dissatisfied with the deal when they learned that Huddleston had inserted the language "effective August 1, 1999" on the deed after its execution, but prior to its recording. According to Huddleston, the Carters agreed (via telephone conversation) to this addition; however, the Carters adamantly deny any knowledge of this addition and assert that the effective date of August 1 would allow Huddleston to get the royalties from production during August, to which they would not have agreed. The Carters assert that the addition was fraudulent and in bad faith.
The Carters sent a copy of the deed to WSF, Inc., the drilling company working on the land, which promptly filed a concursus proceeding to determine to whom it should pay the royalties from production on the property. The production payments were deposited in the registry of court. Subsequently, the Carters filed suit, pro se, against Huddleston seeking damages in the amount of $1,000,000 for the alleged fraudulent alteration of, or addition to, the deed and requesting that the deed be "squashed" and that they be allowed to return Huddleston's money. These suits were consolidated. The documentary evidence reflects that Huddleston paid the Carters $5,553.97. The Carters, *448 however, dispute receiving any amount over $5,000.
In the concursus proceeding, the Carters filed several pleadings, including a motion for summary judgment. In response, Huddleston filed a partial motion for summary judgment and a motion to strike the Carters' motion for summary judgment. In the suit for damages, the Carters filed a motion for production of documents (which sought all financial information of Huddleston) and a motion to stay/motion to freeze all assets of Huddleston, who responded with a motion to strike and motion for sanctions and peremptory exception of no cause of action. All of the above were set for hearing on February 1, 2001. Lynn Estes enrolled as counsel for the Carters on the date of the hearing and the matter was continued to March 8, 2001. On March 8, Mr. Estes was allowed to withdraw, citing irreconcilable differences. When the ruling allowing Mr. Estes' withdrawal was rendered by the trial judge, Mrs. Carter orally requested a continuance, which was denied.
The trial court then entered the following rulings on the pending motions in each of the consolidated cases:
Concursus proceeding: Huddleston's motion for summary judgment was granted. While not admitting that it owed the Carters any additional sum, Huddleston agreed to pay $553.97 to the Carters and agreed to reformation of the deed dated August 31, 2001 (deleting the effective date of August 1)judgment was entered to that effect.
Suit for damages: Huddleston's motion to strike was granted. Huddleston's motion for sanctions was granted with $500 for attorney fees and costs awarded. Huddleston's exception of no cause of action was granted. The Carters' suit was dismissed with prejudice.

DISCUSSION
The five assignments of error asserted by the Carters primarily involve the following three issues: (1) whether the trial court erred in allowing Mr. Estes to withdraw as counsel for the Carters; (2) whether the trial court erred in denying the Carters' request for an extension of time; and (3) whether the trial court erred in ordering reformation of the deed and dismissing the Carters' suit for damages without a full hearing. Before beginning our discussion, we note that much of the Carters' argument on appeal references facts and information which were not introduced into evidence at the trial court level. In the interest of justice, however, and in recognition that the Carters are proceeding pro se in this appeal, we will briefly address each argument presented by the Carters.
First, the Carters complain that there was not a sufficient reason stated by the trial court, or Mr. Estes, to justify allowing him to withdraw from their representation. The record indicates that Mr. Estes determined that he was unable to continue to represent the Carters on his discovery of certain criminal aspects of Mrs. Carter's background. Rule 1.16(b)(6) of the Rules of Professional Conduct provides that an attorney may withdraw from representation of a client if "good cause for withdrawal exists." We believe it is within the discretion of the trial judge to grant or deny a motion to withdraw; and, absent a showing of abuse of that discretion, we will not disturb the trial judge's decision. While we note that the details of Mrs. Carter's criminal history which gave rise to the "irreconcilable differences" cited by Mr. Estes are not in the record, it is clear that Mr. Estes was concerned about her *449 background. We find no abuse of discretion in allowing his withdrawal.
Next, regarding the trial court's denial of Mrs. Carter's request for a continuance, La. C.C.P. art. 1601 provides that a continuance may be granted in any case if there is good ground therefor. It is well settled that the trial court has great discretion in granting or denying a motion for a continuance under article 1601 and the trial court's ruling will not be disturbed on appeal in the absence of clear abuse. Louisiana State Bd. of Dentistry v. Baker, 33,828 (La.App.2d Cir.9/27/00), 768 So.2d 683; Walker v. Aulds, 28,968 (La.App.2d Cir.12/11/96), 685 So.2d 421; Coffman v. Mainhardt, 602 So.2d 264 (La. App. 2d Cir.1992). In the case sub judice, Mrs. Carter indicated to the trial court that she needed additional time to "develop new issues," which she stated were related to her alleged criminal background. The trial court noted that the Carters had been proceeding pro se in both lawsuits and assured Mrs. Carter that her background would not be an issue in the proceedings. On this record, there has been no showing that the denial of Mrs. Carter's motion for continuance constituted a clear abuse of discretion.
We now turn to the third issue raised in this appeal, whether the rulings on the merits of the consolidated law suits were erroneous. As a preliminary matter, we will first acknowledge the Carters' suggestion that it was error for the trial court to rule on the pleadings without conducting a full hearing. The motions before the trial court included motions to strike, motions for sanctions, peremptory exceptions and a motion for summary judgment, all of which are properly decided on the face of the pleadings and attachments thereto. The Carters next challenge the trial court's ruling allowing reformation of the deed to delete the effective date inserted by Huddleston. We find no error in this ruling. The Carters agree that they executed the deed dated August 31, 2001, and that the only alteration of such deed was the insertion of the effective date of August 1, 2001. Since Huddleston agreed to reformation of the deed, deleting the effective date, there was no need for a contradictory hearing on the motivation or propriety of Huddleston's alteration of the deed. We can find no reasonable basis for invalidating the deed as executed on August 31, 2001. The Carters also argue in their brief that the trial court erred in accepting payment of $553.94 by Huddleston to them in open court, representing the amount the Carters claim they were "shorted" in the transaction. This payment provides the compensation sought by the Carters regarding the transaction. As such, we do not find error in the trial court's judgment.
Finally, the Carters challenge the trial court's dismissal of the suit for damages filed by them against Huddleston and the imposition of sanctions against them on the basis that the sole purpose of the suit was to harass Huddleston. The petition filed by the Carters sought $1,000,000 in damages for Huddleston's alleged fraudulent alteration of the deed. The Carters subsequently filed various discovery documents seeking all financial information of Huddleston, which the trial court likened to the information disclosed in a judgment debtor rule. We agree with the trial court and Huddleston that this request for financial information sought material which was not relevant to the subject matter of the pending action, nor was the information sought reasonably calculated to lead to the discovery of admissible evidence. See La. C.C.P. art. 1422. The Carters argue that this information was necessary in order for them to justify filing a suit of this magnitude. Their position, however, was admitted *450 by Mrs. Carter to be based on the faulty belief that they must determine the worth and assets (or ability to pay a judgment) of the defendant to justify to the trial court the amount of damages sought in their petition. The trial court found the Carters' repeated requests for the financial information to be harassing to Huddleston and imposed sanctions against the Carters. While we have found no similar cases in the jurisprudence, on this record, we find no error in the trial court's judgment.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of appeal are assessed to Leon Carter, Jr. and Joanne Carter.
AFFIRMED.