817 So.2d 1166 (2002)
Dianne W. MILLER, as Settlor of the Leo A. Miller and Dianne W. Miller Family Trust, Plaintiff-Appellee,
v.
Leo A. MILLER, Defendant-Appellant.
No. 35,934-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 2002.
Rehearing Denied June 6, 2002.
*1168 Leo A. Miller, Jr., Monroe, for Defendant-Appellant.
Donald C. Douglas, Jr., Monroe, for Plaintiff-Appellee.
Before NORRIS, CARAWAY and PEATROSS, JJ.
NORRIS, C.J.
The defendant, Leo A. Miller Jr. ("Leo"), appeals a judgment removing him as trustee of the Leo A. Miller Jr. and Dianne W. Miller Family Trust ("the trust"). For the reasons expressed, we affirm.

Factual and procedural background
Dianne Miller, who is Leo's wife, formed the trust in late 1989, by Act of Trust designating her as the sole settlor.[1] The trust corpus is listed as 23 shares of stock in Ledi Inc., a family corporation, transferred by Dianne to the trust. Subsequent filings show that the corpus also included shares in another family corporation, Lone L; Dianne and Leo were officers of both corporations. The Act of Trust, ¶ 8-11, states that the settlor "specifically and expressly reserves * * * the power to remove any Trustee, with or without cause." The Act of Trust's preamble names Dianne and Leo as original co-trustees.
At some point, Dianne and Leo divorced. In July 1993 they executed a property settlement which provided that Dianne would resign as co-trustee of the trust and officer of the corporations, so the "trust and corporations will hereafter be administered solely by Leo A. Miller Jr." On the same date, Dianne executed an act of resignation stating that in accordance with the settlement, Dianne resigned as trustee, "it being the intent of the parties that [Dianne] shall hereafter have no further involvement or relationship to said trust whatsoever."
On March 1, 2001, by letter from her attorney, Dianne advised Leo that she was removing him as trustee pursuant to Act of Trust ¶ 8-11. She also instructed him to deliver all trust documents. Leo, who is an attorney, refused on grounds that Dianne had "relinquished any relationship with the trust in 1993." Leo also rejected a subsequent demand letter.
Dianne filed the instant suit on April 24, 2001, demanding Leo's removal as trustee and the return of all trust property and documents. Hearing on the rule was set for June 20.
On June 19, Leo moved for a continuance, urging that the parties were still negotiating a final settlement of all claims and he needed additional time to research *1169 the legal issues. He also urged that he had filed a separate suit for declaratory judgment to determine whether the parties reached a settlement in May and June 2001. The court reset Dianne's rule to June 28 and 29, 2001.[2] On June 28, the District Court signed an order resetting the rule for July 19. On July 5, Leo filed a motion to upset the July 19 setting; the District Court denied this motion at Leo's costs.
The hearing occurred on July 19. The only witness to testify was Dianne, who stated that she wished to exercise her rights as settlor of the trust. When Leo began to cross examine her about the 1993 settlement, Dianne's counsel objected on grounds that this extrinsic act could not amend the Act of Trust. The District Court sustained the objection, citing Albritton v. Albritton, 91-2903 (La.5/26/92), 600 So.2d 1328, but allowed Leo to introduce into evidence the 1993 settlement and act of resignation. The court then rendered judgment removing him as trustee and ordering him to turn over all trust property and documents within five days.
Leo has taken the instant appeal. He specifies eight assignments of error, but briefs only six of them. Under the circumstances, we deem the other two (numbers 5 and 8) abandoned. URCA Rule 2-12.4; Boudreaux v. State, 01-1329 (La.2/26/02), 815 So.2d 7.

DiscussionRemoval of trustee
By his second, third and fourth assignments of error Leo urges the District Court erred in removing him as trustee. His principal contention is that the 1993 settlement and act of resignation clearly showed Dianne's intent to renounce her management authority over the trust, and these documents should prevail over the Act of Trust. He concedes that Albritton v. Albritton, supra, prohibits a beneficiary from extending the original term of a trust by means of a sub-trust, but argues that nothing in Albritton prevents the settlor from giving up all her rights therein. He contends, in effect, that the Act of Trust was altered by Dianne's subsequent acts. He also contends that the Act of Trust is ambiguous, as ¶ 8-11 conflicts with ¶ 2-3 ("It is expressly declared that Settlor reserves no right to modify, alter, amend, revoke, manage trust assets or otherwise control this trust in whole or in part at any time").
A trustee shall be removed in accordance with the provisions of the trust instrument or by the proper court for sufficient cause. La. R.S. 9:1789 A. The settlor of an inter vivos trust may reserve the right to remove the trustee. Leonard Oppenheim & Sidney Pugh Ingram, 11 La. Civil Law Treatise: Trusts, § 136 (West, 1977), p. 197; see also, Martin v. Martin, 95-0466 (La.App. 4 Cir. 10/26/95), 663 So.2d 519, writ denied 95-2806 (La.1/29/96), 666 So.2d 682. The provisions of ¶ 8-11 of the Act of Trust, reserving to Dianne the right to remove any trustee with or without cause, will be enforced unless the trust has been modified.
There is a strong public policy in effectuating and protecting the settlor's intent as set forth in the trust instrument. Albritton v. Albritton, supra. The settlor's intent controls, unless opposed to law or public policy. Richards v. Richards, 408 So.2d 1209 (La.1981). The settlor may modify the terms of the trust after its creation only to the extent he expressly reserves the rights to do so. La. R.S. 9:2021.
*1170 In Albritton v. Albritton, supra, the settlor created an irrevocable testamentary trust naming his two sons as trustees and his grandson as principal beneficiary of the naked ownership of certain real estate. The trust instrument provided that the trust would terminate in two phases, when the grandson reached the ages of 21 and 26. Shortly before the first termination date, however, the beneficiary and trustees signed an agreement purporting to extend the term of the original trust or, alternatively, to place the settlor's interest in a new trust under the same terms as the original trust. Finding neither the extension nor the new trust valid, the Supreme Court explained:
The trust would hardly be a stable device for the transmission of property if the beneficiaries and trustee could make agreements that could modify the settlor's fundamental intent in setting up the trust. [Citations omitted.] Thus, under the scheme of the trust code, even the settlor has no power to modify the trust he has created unless he expressly reserves the right to do so. (600 So.2d at 1331, emphasis added.)
The court further recognized the concept of "trust indestructibility" as part of a public policy of "protecting the trust instrument from any modification or termination contrary to the settlor's clearly expressed intent." Id., at 1332; In re Guidry Trust, 97-1210 (La.App. 3 Cir. 5/6/98), 713 So.2d 631.
We acknowledge various factual differences between Albritton and the instant case. Albritton involved a testamentary trust, which was obviously the settlor's final statement of his intent, and the subsequent agreement between the beneficiary and trustee was clearly antagonistic to the settlor's will. However, Albritton's rationale nevertheless applies. The trust would not be a stable financial device if its critical components could be altered by extrinsic act unless the trust instrument provided for such a modification. The Act of Trust does not so provide; in fact, ¶ 2-3 prohibits it. Moreover, despite its somewhat broad language, the 1993 settlement does not express a clear intent to revoke Dianne's rights as settlor under ¶ 8-11, and the act of resignation as co-trustee clearly renounces only Dianne's administrative powers, not her rights as settlor of the trust. The District Court was not plainly wrong to find that the 1993 acts did not alter the Act of Trust.
By reply brief, Leo further argues that In re Guidry Trust, supra, is apposite and supports his argument that Dianne, as settlor, lacks the power to remove him as trustee. As in the instant case, the trust instrument in Guidry contained a blanket prohibition on the settlor's authority to "alter, amend, revoke or terminate" the trust. However, it did not include any provision analogous to ¶ 8-11, expressly reserving to the settlor the right to remove a trustee. For this reason, Guidry is distinguished.
Finally, we perceive no conflict between ¶ 2-3 and ¶ 8-11 of the Act of Trust. The first is a general ban on the settlor's authority to modify the terms of the trust, thus preserving its irrevocable status; the second is a specific reservation of power to remove any trustee with or without cause. The general provision does not negate the special instance provided in the Act of Trust. La. C.C. arts.2050, 2052; Horil v. Scheinhorn, 95-0967 (La.11/27/95), 663 So.2d 697; Lewis v. Intermedics Intraocular Inc., 56 F.3d 703 (5 Cir.1995).
These assignments of error lack merit.

Equitable remedies
By his sixth and seventh assignments Leo urges that even if Dianne had the authority to remove him as trustee, the District Court erred in failing to apply the equitable doctrines of detrimental reliance *1171 and abuse of rights. In support he cites La. C.C. art.1967 and argues that he reasonably relied on Dianne's representations in 1993 that she would have no further relationship with the trust. He also contends, without elaboration, that Dianne's decision to remove him as trustee meets all the elements of abuse of rights as set forth in McInnis v. McInnis, 24,772 (La. App. 2 Cir. 5/5/93), 618 So.2d 672.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on its to his detriment and the other party was reasonable in so relying. La. C.C. art.1967. A claim of detrimental reliance must meet three requirements: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change in position to one's detriment because of the reliance. Morris v. Friedman, 94-2808 (La.11/27/95), 663 So.2d 19. Detrimental reliance is not favored in our law and is sparingly applied as it bars the normal assertion of rights otherwise present. Maddox v. Keen, 33,072 (La.App. 2 Cir. 4/7/00), 756 So.2d 1279, and citations therein. The doctrine applies only to misrepresentation of fact. Morris v. Friedman, supra; Barnett v. Board of Trustees, 00-1041 (La.App. 1 Cir. 6/22/01), 809 So.2d 184.
Because the trust is irrevocable and cannot be modified by the settlor, we find that Leo cannot have reasonably relied on the 1993 documents to modify the trust. Aside from the 1993 settlement and act of resignation, this record contains no evidence of any other "representations" Dianne may have made. Moreover, to apply detrimental reliance would deprive Dianne of a right she clearly retained in ¶ 8-11 of the Act of Trust. The theory of detrimental reliance is inapplicable to this case.
Abuse of rights is another equitable concept that is sparingly applied because it nullifies a party's otherwise enforceable rights. McInnis v. McInnis, supra. It applies only when one of four criteria is shown: (1) the right has been exercised for the predominant motive of causing harm; (2) there is no serious or legitimate interest for exercising the right; (3) exercise of the right is against moral rules, good faith, or elementary fairness; or (4) the right is being exercised for a purpose other than that for which it was originally conferred. Massachusetts Mut. Life Ins. Co. v. Nails, 549 So.2d 826 (La. 1989); McInnis v. McInnis, supra.
In brief, Leo asserts that all of these conditions exist, but he cites no facts in support. This court declined to find an abuse of rights in McInnis, supra, when the settlors exercised their right to revoke a trust in which their grandson was the principal beneficiary. The instant case also resembles Steier v. Heller, 31,733 (La. App. 2 Cir. 5/5/99), 732 So.2d 787, which found no abuse of right when a landlord exercised an option to terminate the lease. In his final accounting of trustee, Leo admitted that he had transferred trust assets to himself; this clearly negates the claim that Dianne has "no serious or legitimate interest" in removing him as trustee or that her action was "against moral rules, good faith or elementary fairness." There is no record evidence to support the other elements of abuse of rights.
These assignments of error lack merit.

Local rule and other procedural violations
By his first assignment Leo urges 12 separate violations of Local Rules of Court and procedural statutes which, he contends, denied him due process. Citing State v. Sprint Communications Co., 96-3094 (La.9/9/97), 699 So.2d 1058, and Rock v. ATPIC Trucking Co., 98-1420 (La.App. 1 Cir. 6/25/99), 739 So.2d 874, he contends *1172 that the violation of local rules of court mandates reversal.
Rules of procedure are to be construed liberally with due regard for the fact that such rules implement the substantive laws and are not an end in themselves. La. C.C.P. art. 5051; City of Baton Rouge v. Johnca Properties L.L.C., 00-2524 (La.6/1/01), 794 So.2d 766. Local rules of court are intended solely to aid in the orderly and efficient conduct of litigation and are not to be construed so literally as to defeat their intended purpose. L & A Contracting Co. v. Mabry, 27,791 (La.App. 2 Cir. 1/24/96), 666 So.2d 1295, and citations therein. Moreover, the trial court has great discretion in the construction, interpretation, application or enforcement of its own rules. Precision Motors Inc. v. Beder, 273 So.2d 650 (La.App. 4 Cir.1973).
Leo's first five alleged violations are that one day before the June 28 hearing, the court granted Dianne a continuance; without consulting Leo, the court set the new hearing for July 19; the court then denied Leo's motion to upset the July 19 hearing; one day before that hearing, the court accepted Dianne's brief; and even after Leo complained to the District Court that he was "surprised" by the issues raised in that brief, the court held the hearing anyway. Leo contends that these rulings violate 4th JDC Rules 17B and 21.[3] We note, however, that the matter was fixed for hearing upon filing of the petition for summary proceedings; because the matter did not allege a "disputed interpretation of the law," Rule 17B does not apply. Leo requested a continuance on June 19, claiming he needed more time to research legal issues. The District Court granted this motion by conference in which she gave both sides the opportunity to file memoranda of legal authorities. Leo filed no memorandum. The court also granted Dianne a continuance, but denied Leo's subsequent motion to upset. Considering the time frame involved, we find no abuse of discretion in the court's grant of one continuance to each side, and its denial of further delays. La. C.C.P. art. 1601; Sauce v. Bussell, 298 So.2d 832 (La.1974); WSF Inc. v. Carter, 35,581 (La.App. 2 Cir.12/28/01), 803 So.2d 445.
Leo's next three alleged violations are that the trial court refused to let him present evidence at the hearing, denied him the right to a hearing and denied him the right to counsel at the hearing. However, Leo provides no factual support for these claims, and the record completely contradicts them. The District Court held a hearing at which Leo offered into evidence the 1993 settlement and act of resignation; the transcript of the hearing does not show that Leo, who is an attorney, complained that he needed representation. These three items are completely devoid of merit.
His next two alleged violations are that the judgment fails to remove him as trustee "provisionally" and to appoint a provisional trustee. La. R.S. 9:1791, 1786. However, a judgment removing a succession representative is not void for failure *1173 to recite that the removal is "provisional" under La. C.C.P. arts. 2974 and 2122. Succession of Koch, 379 So.2d 1080 (La. 1980). The same rationale applies to the removal of a trustee under R.S. 9:1791. The appointment of a provisional trustee is discretionary; given Leo's admission that the trust is devoid of assets, there was absolutely no need for the court to appoint one. These items lack merit.
The next alleged violation is that the District Court failed to grant him a suspensive appeal, to which he is entitled under La. C.C.P. arts. 2121, 2122 and 2133. A judgment removing a trustee "shall be executed provisionally." La. R.S. 9:1791. This is analogous to a judgment removing a succession representative, which "shall be executed provisionally, notwithstanding appeal," C.C.P. art. 2974, and is not subject to suspensive appeal. Succession of Beattie, 163 La. 831, 112 So. 802 (1927). Since the instant judgment is provisional, we perceive no error in the District Court's denial of a suspensive appeal.
Finally, Leo contends without elaboration that the District Court should not have taken up his motion for new trial after his motion for appeal had been granted; he suggests that the grant of appeal divested the District Court of jurisdiction under La. C.C.P. art.2088. In point of fact, the appeal was only premature until the court denied the motion for new trial on December 19. La. C.C.P. art. 2087 D. We perceive no error.
In conclusion, we have closely considered each of the alleged violations of local rules of court and other procedural rules. Some of the complaints are totally unsubstantiated. The rest present only questionable irregularities for which there is no prejudice shown and certainly no denial of due process, as was found in State v. Sprint Communications and Rock v. ATPIC Trucking, supra. This assignment of error lacks merit.

Conclusion
For the reasons expressed, the judgment is AFFIRMED. Costs are assessed to appellant, Leo A. Miller Jr.
AFFIRMED.

APPLICATION FOR REHEARING
Before NORRIS, C.J., WILLIAMS, STEWART, CARAWAY, and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] The final paragraph of the Act of Trust and the attachment describing the trust corpus refers to "Settlors" in the plural, but we consider these to be typographical errors.
[2] Leo also filed a response to the petition. One of the attachments is a "final accounting by trustee," in which Leo states that the trust never had any money, was significantly indebted to him, and that he had transferred trust assets to himself.
[3] Rule 17B provides: "The party who originally files a pleading involving a disputed interpretation of the law must file a brief or memorandum of authority in support of his/ her contentions in order to have it fixed for hearing. No such matter will be fixed for hearing on request of that party unless such a brief or memorandum has been filed in the record. If an opponent to such a matter be the party requesting hearing, he/she must file a brief or memorandum with the request. Otherwise, opponents must file a brief or memoranda with the Court and opposing counsel no less than 48 hours before the hearing." Rule 21B provides: "No continuance of any matter fixed for hearing or trial will be granted ex parte or on oral request."