IN THE SUPREME COURT OF MISSISSIPPI

NO. 2013-CC-00682-SCT

*MISSISSIPPI POWER COMPANY*

*v.*

*MISSISSIPPI PUBLIC SERVICE COMMISSION*
*AND BIGGER PIE FORUM, LLC.*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/02/2013 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | BEN HARRY STONE |
| | RICKY J. COX |
| | LEO ERNEST MANUEL |
| | MICHAEL BRANT PETTIS |
| | TIMOTHY ALAN FORD |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WILLIAM JEFFREY JERNIGAN |
| |     HAROLD EDWARD PIZZETTA, III |
| | ROBERT P. WISE |
| | DORSEY R. CARSON, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART |
| | AND REMANDED - 04/10/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE RANDOLPH, P.J., PIERCE AND KING, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Mississippi Power Company ("Mississippi Power") filed documents asserting

confidentiality with the Mississippi Public Service Commission ("Commission") related to

a certificate-of-public-convenience-and-necessity proceeding in January 2009. In July 2012,

Bigger Pie Forum (BPF) requested three of those documents from the Commission, and Mississippi Power sought a protective order. Following a hearing, Hinds County Chancellor Dewayne Thomas ordered that the documents be produced. Mississippi Power appealed.

### FACTS AND PROCEDURAL HISTORY

¶2. On January 16, 2009, Mississippi Power filed a "Petition for a Certificate of Public Convenience and Necessity[,]" requesting authority to construct an electric generation facility in Kemper County, Mississippi ("Kemper Project").[1] Associated with that filing, Mississippi Power filed documents with the Commission, at least some of which were marked "confidential." Ultimately, the Commission approved the Final Certificate Order on June 3, 2010.

¶3. On July 3, 2012, Bigger Pie Forum ("Bigger Pie")[2] requested several documents from the Commission marked confidential by Mississippi Power during the certificate proceeding in January 2009. On August 6, 2012, the Hinds County Chancery Court granted Mississippi Power a temporary protective order which prevented the Commission from releasing the "confidential" documents pending a hearing on the matter. Following a hearing on September 18, 2012, Hinds County Chancellor Dewayne Thomas denied Mississippi Power's "Petition for Protective Order" and ordered that the documents be produced within ten days of his

---

[1]The Commission filed a brief in this matter but took "no position whether the requested documents are exempt from disclosure under the Mississippi Public Records Act."

[2]Bigger Pie is a media outlet which has covered the Kemper Project extensively and has expressed disapproval of the project.

April 2013 ruling. Subsequently, Mississippi Power filed a "Notice of Appeal" and an accompanying motion to stay the order pending resolution of the appeal. The chancellor granted Mississippi Power's motion to stay.

¶4.    Although the chancery court granted Bigger Pie access to the requested documents, in its brief to this Court, Bigger Pie "reviewed its requests for disclosure . . . and clarif[ied] exactly what portions of the three withheld documents it . . . seeks disclosure." Bigger Pie narrowed the information at issue to "**the long term natural gas price forecast and a forecast of the economic impact of pending federal legislation of greenhouse gas emissions**." Bigger Pie seeks the forecast information Mississippi Power presented to the Commission in support of its choice of the Kemper plant as opposed to the other alternatives considered, *i.e.*, natural gas and nuclear. Bigger Pie argues, *inter alia*, that Mississippi Power's choice of alternatives directly affects the "rates" that customers will be charged; therefore, under Mississippi Code Section 79-23-1(1),[3] the information should be made available.

¶5.    Mississippi Power argues that the information does not affect "rates" as contemplated by statute, and, even if it does affect rates, the information is nonetheless protected as "trade

---

[3]*See* Miss. Code Ann § 79-23-1(1) (Rev. 2013) ("Commercial and financial information of a proprietary nature required to be submitted to a public body, as defined by paragraph (a) of Section 25-61-3, by a firm, business, partnership, association, corporation, individual or other like entity, shall be exempt from the provisions of the Mississippi Public Records Act of 1983; provided, however, that nothing herein shall be construed to deny access to such information submitted to a regulatory agency by a public utility that is related to the establishment of, or changes in, rates regulated by such agency.")

3

secrets or confidential commercial or financial information," under Section 79-23-1(2).[4]

Mississippi Power also argues that the information was presented in a certificate-of-need (CON) proceeding – not a rate proceeding. Mississippi Power presented the documents under seal and requested that this Court conduct an *in camera* inspection, arguing that this case "involve[s] a straightforward matter of statutory interpretation as applied to the documentary evidence submitted by the parties."

¶6.    After the parties had fully briefed the issues before this Court, on October 21, 2013, Bigger Pie filed a "Motion . . . to Dismiss [Mississippi Power's] Appeal and Determine Damages pursuant to Rule 38 MRAP." Bigger Pie asserted that it had learned, after filing its brief, that Mississippi Power had provided the same forecast information sought by Bigger Pie to the Wall Street Journal (WSJ) in July 2012. That information was published in an article by the WSJ regarding the Kemper project. Bigger Pie further asserted:

> It is apparent that the table[5] of **long term natural gas prices and CO2 cost assumptions** that the WSJ obtained from Southern/MPC . . . **is the information that BPF sought** in its public records request . . . . Further, it is apparent that the **natural gas price forecast and CO2 cost assumption data revealed** . . . by Southern/MPC to the WSJ regarding the Kemper IGCC constitutes the data BPF sought in un-redacted form . . . ."

---

[4]*See* Miss. Code Ann. § 79-23-1(2) (Rev. 2013) ("Nothing in this section shall be construed to deny a public utility the right to protect trade secrets or confidential commercial or financial information, as provided in subsection (1) of Section 25-61-9.")

[5]In the WSJ article, the "table" was entitled "Fuel Prices Used in 2009 Kemper Business Case (Certification Filing)."

Bigger Pie sought a damages sanction, arguing that Mississippi Power's claim of "confidentiality" was fraudulent in light of the fact that it had released the same information to the WSJ.

¶7.     Then, the very next day, Bigger Pie filed a motion withdrawing its October 21 motion, stating that it had conducted a search of its *own* records and discovered that Bigger Pie had "received the fuel price data [from Mississippi Power] . . . that the Wall Street Journal has now published." As a result of Bigger Pie's request to narrow the scope of the appeal and [Bigger Pie's post-brief revelations[,] it appeared that this appeal may be moot. Thus, on December 13, 2013, this Court ordered "that the parties shall show cause why this proceeding should not be dismissed as moot and vacate the order of the chancery court."

¶8.     In its "Response to the Court's En Banc Order," Bigger Pie clarified:

> The long term natural gas price forecast with CO2 cost assumptions that [Mississippi Power] emailed to [Bigger Pie] in 2012 is a filing [Mississippi Power] made with the [commission] eleven months later dated December 7, 2009. [Bigger Pie] seeks the earlier January 19, 2009 long term natural gas forecast and CO2 cost assumptions . . . .

Bigger Pie submitted that this Court should "compare the sealed . . . documents" with the forecast chart given to the WSJ and Bigger Pie in August 2012. If "the two forecasts are different[,]" Bigger Pie contends "this case is not moot."

¶9.     In its "Response to Order to Show Cause[,]" Mississippi Power submitted that "the documents [it] filed confidentially with the . . . Commission and that are the subject of this appeal are distinctively different than the information [Mississippi Power] provided to Bigger Pie and the Wall Street Journal." Mississippi Power reiterated its argument that the

documents "contain confidential, proprietary and/or trade secret information[,]" and are not subject to disclosure.

ANALYSIS

¶10. A review of the documents under seal and the forecast chart published by the WSJ reveals that the sealed documents contain information that is similar in kind, yet "distinctively different" from that published by the WSJ. The sealed documents contain various charts and graphs which pertain to natural gas price forecasting and $CO_2$ cost assumptions. The documents also contain information that does not relate to natural gas price forecasting and $CO_2$ cost assumptions.

¶11. First, we will address the latter information. Bigger Pie voluntarily narrowed the scope of the information that it sought on appeal to "the long term natural gas price forecast and $CO_2$ cost assumptions." Bigger Pie is not seeking information which is outside its stated scope. Thus, this Court need not reach the issue of whether information not related to natural gas price forecasts and $CO_2$ cost assumptions is protected as "confidential, proprietary and/or trade secret information."

¶12. Addressing the information that is within Bigger Pie's stated scope, Bigger Pie argues, "[i]f the two forecasts are of the same kind of information, although using different gas price numbers, it follows that the earlier January 19, 2009 filing [Bigger Pie] seeks is no more a 'secret' or 'trade secret' than the later December 7, 2009 filing." We agree. Mississippi Power's revelation of natural gas price forecasts and $CO_2$ cost assumptions provided to the

Commission in December 2009 militates against the argument that a similar forecast submitted in January 2009 would be entitled to confidential, secret status.

¶13.     Finally, we will address the information which Bigger Pie is entitled to have produced. Most of the charts and graphs in the sealed documents are not in the same format as that published by the WSJ. The chart(s) that are in similar forms reveal numbers that are different from those published by the WSJ, but it is beyond our expertise to assess whether the various charts take into account the same considerations. Bigger Pie has argued that if "the two forecasts are different . . . this case is not moot." Simply put, we are unable to answer that question, for there is not a chart under seal that is identical to the published chart by which a side-by-side comparison can be made. However, whether the numbers are "different" is not the controlling issue. As discussed *supra*, Bigger Pie is entitled to the January 2009 natural gas price forecasts and $CO_2$ cost assumptions similar in kind to those published by the WSJ. This information cannot be argued to be confidential, regardless of whether the numbers related to long-term natural gas forecasts and $CO_2$ cost assumptions are the same or different.

¶14.     We affirm the judgment of the Hinds County Chancery Court to the extent that it ordered disclosure of the January 2009 gas price forecasts and $CO_2$ cost assumptions that are similar in kind to those published by the WSJ. However, we remand this case to the Chancery Court of Hinds County to consider the documents under seal and order that information pertaining to natural gas price forecasts and $CO_2$ costs assumptions be produced by Mississippi Power. Mississippi Power should not be compelled to produce portions of the documents which do not relate to natural gas price forecasts or $CO_2$ cost assumptions.

7

¶15.    Such a determination may prove difficult, if not impossible, for the chancellor, based on the format of the sealed documents compared to the information published by the WSJ. A special master may be required. This Court "recognize[s] that reference to a special master without the consent of the parties is the exception and not the rule." *Lewis v. Lewis*, 54 So. 3d 216, 218 (Miss. 2011) (citing Miss. R. Civ. P. 53(c)). Such "reference without the consent of the parties would require a finding by the chancellor of exceptional conditions." *Id*. at 219. An exceptional condition would be the inability of the chancellor to discern what we likewise cannot. "The chancellor[,]" not this Court, "is in the best position to make the determination of whether" the complexities of the documents under consideration "are sufficiently exceptional to warrant the appointment of a special master." *Id*.

¶16.    **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**