# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-IA-01554-SCT

*SAFECO INSURANCE COMPANY OF AMERICA*

*v.*

*STATE OF MISSISSIPPI EX REL. JIM HOOD*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/25/2017 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GREGG A. CARAWAY |
| | CLIFFORD K. (FORD) BAILEY, III |
| | JUDY Y. BARRASSO |
| | STEPHEN L. MILES |
| | CHLOÉ M. CHETTA |
| | STEPHEN R. KLAFFKY |
| ATTORNEYS FOR APPELLEE: | GEORGE W. NEVILLE |
| | DONALD L. KILGORE |
| | JACQUELINE H. RAY |
| | WILLIAM L. SMITH |
| | LUCIEN SMITH |
| | BENJAMIN BRYANT |
| | CRYMES G. PITTMAN |
| | WILLIAM E. COPLEY |
| | MAISON HEIDELBERG |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | VACATED AND REMANDED - 08/22/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     This case is before the Court on interlocutory appeal.  Safeco Insurance Company

(Safeco) challenges the circuit court's reassignment of this case and the appointment of a

special master. We find an abuse of discretion and vacate the reassignment order and the special-master order. The case is remanded for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2. This case arises from Hurricane Katrina insurance litigation. After the hurricane had destroyed many homes, policyholders and insurance companies began litigating whether the hurricane losses were caused by flood damage or wind damage. The distinction determined whether the insurance companies would pay claims on those polices that did not cover flood damage.

¶3. For Mississippi residents who could not recover under an insurance policy at that time, Mississippi enacted the Homeowner Assistance Program (HAP), a federally funded program intended to assist uninsured or underinsured homeowners. According to the State, a portion of the HAP assistance would not have been paid by the State if insurers had not wrongly characterized flood-damage claims as wind-damage claims.

¶4. Since 2015, the State has initiated at least twelve HAP lawsuits against insurers, asserting different theories of liability related to HAP. Some of the cases have been settled, while others are pending in both state and federal courts.[1] Four of such cases are relevant

---

[1] *See, e.g.*, ***Mississippi ex rel. Hood v. MeritPlan Ins. Co.***, No. 1:15-cv-00614 (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Nov. 20, 2015) (initially assigned to and now pending before Judge Green; settled and dismissed); ***Mississippi ex rel. Hood v. Balboa Ins. Co.***, No. 1:17-cv-00146 (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Mar. 10, 2017) (initially assigned to Judge Green; settled and dismissed); ***Mississippi ex rel. Hood v. USAA Cas. Ins.***

here.

¶5.     On April 21, 2015, the State filed the first HAP complaint against State Farm Fire & Casualty Company (State Farm).[2]  The State alleged that State Farm misadjusted 8,238 unidentified Katrina-related insurance claims. This case was initially randomly assigned to Senior Circuit Judge Tomie Green.

¶6.     On November 20, 2015, the State filed another HAP case against Metropolitan Property and Casualty Insurance Company (Metropolitan).[3]  The State alleged that Metropolitan misadjusted 429 unidentified Katrina-related insurance claims.  This case was initially randomly assigned to Circuit Judge William Gowan, who retired in March 2018.

¶7.     Within several months of filing, Judge Gowan considered and ruled on two dispositive

---

*Co. et al.*, No. 1:18-cv-00210 (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Apr. 16, 2018) (initially assigned to Judge Gowan's successor; now pending before Judge Faye Peterson); *Mississippi ex rel. Hood v. Prime Ins. Co.*, No. 1:18-cv-00211 (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Apr. 16, 2018) (initially assigned to Judge Gowan's successor; now pending before Judge Peterson); *Mississippi ex rel. Hood v. Allstate Ins. Co., et al.*, No. 1:18-cv-00212 (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Apr. 16, 2018) (initially assigned to and now pending before Judge Green); *Mississippi ex rel. Hood v. Am. Sec. Ins. Co.*, No. 1:18-cv-00213 (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Apr. 16, 2018) (initially assigned to Judge Gowan's successor; now pending before Judge Peterson); *Mississippi ex rel. Hood v. Nat'l Fire and Cas. Co.*, No. 1:18-cv-00214 (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Apr. 16, 2018) (initially assigned to Judge Gowan's successor; now pending before Judge Peterson); *Mississippi ex rel. Hood v. Nationwide Mut. Ins. Co., et al.*, No. 1:18-cv-00215 (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Nov. 20, 2015) (initially assigned to Judge Green; interlocutory appeal pending 2019-M-01017-SCT).

[2] *Mississippi ex rel. Hood v. State Farm Fire & Cas. Co.*, No. 1:15-cv-00221-TTG (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Apr. 21, 2015) (*State Farm*).

[3] *Mississippi ex rel. Hood v. Metro. Life Ins. Co.*, No. 1:15-cv-00615-WAG (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Nov. 20, 2015) (*Metropolitan*).

motions. Judge Gowan ruled against the State and held: first, that the State's subrogation claims were untimely; second, that the State violated Mississippi's pleading requirements by not appending each policyholder's subrogation agreement to the complaint; and third, that the State was to disclose these agreements, "rather than making the Defendant go on a fishing expedition." The case was settled following this ruling.

¶8.     Shortly thereafter, on March 29, 2017, the State filed two more HAP cases. The first case was filed against Safeco.[4] The complaint alleged that Safeco misadjusted 232 unidentified Katrina-related insurance claims. This case was initially randomly assigned to Judge Gowan.

¶9.     The second case was filed against Liberty Mutual Insurance Company (Liberty Mutual).[5] The complaint alleged that Liberty Mutual misadjusted 180 unidentified Katrina-related insurance claims. This case was initially randomly assigned to Judge Green.

¶10.    On May 9, 2017, in *State Farm*, after the State filed a motion for entry of a proposed scheduling order and State Farm filed a motion to dismiss that was similar to that motion granted by Judge Gowan in *Metropolitan*, Judge Green entered the following text order, without conducting a hearing:

> ORDER OF NOTICE OF INTENT TO APPOINT SPECIAL MASTER.
> Please take notice OF THE COURT'S INTENT to appoint a SPECIAL

---

[4] *Mississippi ex rel. Hood v. Safeco Ins. Co.*, No. 1:17-cv-00197-WAG (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Mar. 29, 2007) (*Safeco*).

[5] *Mississippi ex rel. Hood v. Liberty Mut. Ins. Co.*, No. 1:17-cv-00198-TTG (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Mar. 29, 2007) (*Liberty Mutual*).

4

> MASTER on the grounds of its overcrowded civil and criminal dockets, and other administrative duties, in addition to the parties numerous filings and the complexity of case and the need for timely resolution of pretrial matters. The Special Master's fee and expenses will be borne by the parties, in equal proportion. Any party with a reasonable objection for cause to said appointment shall file said objection on or before May 19, 2017. NO FURTHER WRITTEN ORDER WILL BE ENTERED BY THE COURT.

On July 17, 2017, an order appointing a special master was entered in the *State Farm* case. State Farm objected to the entry of that order. The *State Farm* order is not before this Court.

¶11. On October 2, 2017, both Safeco and Liberty Mutual filed a motion to dismiss the State's claims for failure to join necessary parties and for failure to state a claim, similar to motions that Judge Gowan had granted in *Metropolitan*.

¶12. On October 13, 2017, the State, in the *State Farm* case, filed a motion to consolidate *State Farm* with *Liberty Mutual* and *Safeco* and a motion to appoint a special master. Neither the motion to consolidate nor the motion to appoint a special master was filed in the *Safeco* or *Liberty Mutual* cases.

¶13. Nevertheless, on October 24 and 25, 2017, Judge Green issued a sua sponte order in both the *Safeco* case (in which she was not the assigned judge) and the *Liberty Mutual* case (in which she was the assigned judge) appointing a special master.

¶14. Then, on October 26, 2017, Judge Green entered an order in the *Safeco* case that reassigned the *Safeco* case to her docket.

¶15. On November 8 and 9, 2017, Safeco and Liberty Mutual filed a petition for interlocutory appeal challenging both the reassignment order and the orders appointing a

special master.[6]  In addition to the briefs of the parties and the amicus, on November 8, this Court requested responses from Judges Green and Gowan.  Their joint response was filed on November 13, 2017, and Judge Gowan filed a separate supplemental response on December 7, 2017.

## ISSUES

¶16.    The parties stated the issues as follows:

1.    Did the circuit court err by unilaterally and non-randomly reassigning the *Safeco* case to herself?

2.    Did the circuit court err by appointing a special master without finding an exceptional condition to justify it and by granting the special master excessive authority not warranted by the facts of the cases, including permitting engagement in unlimited substantive ex parte communications?

3.    If the Court finds overcrowding, should it appoint a special judge to hear the *Safeco* and *Liberty Mutual* cases instead of allowing a circuit judge to unilaterally delegate judicial authority to an unelected special master, at the parties' expense, including in a case not assigned to the circuit judge?

## DISCUSSION

### *1.    Did the circuit court err by unilaterally and non-randomly reassigning the Safeco case to herself?*

¶17.    Safeco argues that the sua sponte reassignment of this case violated Rule 1.05A(A) of the Uniform Civil Rules of Circuit and County Court Practice.  Safeco also argues that because Rule 1.05A requires assignments to be random, reassignments should be random as

---

[6] The Court's decision in *Liberty Mutual* will be decided by a separate opinion.

6

well.

¶18.	The first question under this issue is whether circuit judges have the authority to reassign or transfer a case. This Court's appellate review of "questions of law are reviewed de novo." ***Miss. Dep't of Revenue v. Hotel & Rest. Supply***, 192 So. 3d 942, 945 (Miss. 2016) (citing ***Equifax, Inc. v. Miss. Dep't of Revenue***, 125 So. 3d 36, 41 (Miss. 2013)). The Court finds no Rule that prohibits reassignment or transfer of a case to a judge other than the judge to whom the case was initially randomly assigned. Further, the Court has found no Mississippi case that has interpreted this provision explicitly with respect to reassignments or transfers by one judge to another judge in the same district.[7]

¶19.	Safeco's argument is that the reassignment order violates Rule 1.05A and this Court's precedent and should be vacated.

¶20.	Mississippi does indeed follow a rule of random assignment of cases. In November 2000, this Court promulgated Mississippi Rule of Appellate Procedure 27(g):

> The setting of terms and assigning of causes in dockets in the chancery and circuit courts shall be done fairly considering the relative workloads of the judges and the right of litigants within the district to fair and reasonable access to all of the judicial officers, as well as reasonable accommodation of the requests and needs of all the judges within the district. Further, the assignment of cases and dockets shall be done through a systematic plan recognizing the

---

[7]Other states' courts have considered the process and the propriety of judicial reassignment. *See, e.g.*, ***State v. Sprint Commc'ns Co., L.P.***, 699 So. 2d 1058, 1062 (La. 1997) ("We hold the judges . . . cannot be permitted to continue the practice of non-randomly swapping cases originally allotted to them by chance. Just as a litigant may not choose a courtroom or a judge, a judge may not select his caseload or his litigants.").

criteria set out herein.

Then, to establish such a systematic plan, in May 2003, this Court adopted Rule 1.05A of the rules then known as the Uniform Circuit and County Court Rules:

> in multi-judge districts and courts, all civil cases shall be assigned immediately on the filing of the complaint by such method which shall insure that the assignment shall be random, that no discernible pattern of assignment exists, and that no person shall know to whom the case will be assigned until it has been assigned . . . .

¶21. Today, we recognize that the reassignment or transfer of cases is not prohibited by rule.[8] Therefore, based on our de novo review, the Court concludes that cases may be reassigned or transferred by judges when necessary "to secure the just, speedy, and inexpensive determination of every action." M.R.C.P. 1.[9] We now turn to the review of whether Judge Green abused her discretion in the decision to reassign this case.

¶22. On appeal, we review discretionary decisions by trial judges for an abuse of

---

[8] Judge Gowan is correct that "[t]here is no specific statute, rule, or case law [that] prohibits a senior judge, with permission from the assigned judge, from transferring a case for purposes of consolidation and judicial economy." Since no statute, rule, or case law squarely addresses the procedures utilized by Judge Green and Judge Gowan, we find Mississippi Rule of Civil Procedure 81(g) instructive: "When no procedure is specifically prescribed, the [trial] court shall proceed in any lawful manner not inconsistent with the Constitution of the State of Mississippi, these rules, or any applicable statute." M.R.C.P. 81(g).

[9] The Advisory Committee Note to Rule 1 adds that "[t]he primary purpose of procedural rules is to promote the ends of justice; these rules reflect the view that this goal can best be accomplished by the establishment of a single form of action . . . thereby uniting the procedures in law and equity *through a simplified procedure that minimizes technicalities and places considerable discretion in the trial judge for construing the rules in a manner that will secure their objectives*." (Emphasis added.)

8

discretion. ***Douglas v. Burley***, 134 So. 3d 692, 697 (Miss. 2012) (citing ***Venton v. Beckham***, 845 So. 2d 676, 684 (Miss. 2003)). "[A]n abuse of discretion is viewed as a strict legal term" and does not "imply[ ] bad faith or an intentional wrong on the part of the trial judge." ***White v. State***, 742 So. 2d 1126, 1136 (Miss.1999). In ***Douglas***, the Court ruled,

> [J]udicial discretion is not boundless but is defined as a sound judgment which is not exercised arbitrarily, but with regard to what is right and equitable in circumstances and law, and which is directed by the reasoning conscience of the trial judge to just result. An abuse of discretion means *clearly against logic* and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing.

***Douglas***, 134 So. 3d at 697 (emphasis added) (footnotes omitted) (citations omitted) (internal quotation marks omitted).

¶23.    In the reassignment order, Judge Green stated that the purpose of the reassignment was to serve "judicial economy and efficiency of different circuit judges presiding over several different cases with the same or similar issues to be resolved." She further stated that these cases "should be reassigned to the undersigned judge on the bases of judicial economy and efficiency, and also to minimize the risk of inconsistent judicial rulings in the several cases."[10] The order also offered that this case "involves extensive and complex litigation, which requires *the utmost attention* from the judge presiding over the matter." (Emphasis added.)

---

[10] Judge Gowan was also familiar with this litigation. He previously had granted a motion to dismiss in a similar case.

¶24. Yet, at the same time the reassignment order was entered, Judge Green also entered the special-master order. There, Judge Green appointed a special master and gave the special master extensive powers, which will be addressed below. It is important to our review here that we also consider Judge Green's explanation for the appointment of a special master. In the special-master order, Judge Green ruled,

> The parties in this case have filed numerous pretrial motions pertaining to discovery, privileged matters, arbitration and other disputed matters. *The herein Court is pressed to promptly and thoughtfully dispose of litigated matters associated with the trial demands of its heavy civil and criminal docket, as well as, its duties associated with the overall management of the circuit court.* Currently, the Court is without the personnel and resources to thoroughly and closely manage the operation of the massive discovery process believed to be forthcoming in the herein case.

(Emphasis added.)

¶25. The wording of these orders is contradictory.

¶26. In *Canadian National/Illinois Central Railroad Co. v. Smith*, the Court found "it appropriate to provide further clarification as to the disposition of the claims and cases of misjoined plaintiffs, following severance." *Canadian Nat'l/Ill. Cent. R.R. Co. v. Smith*, 926 So. 2d 839, 844 (Miss. 2006). The five plaintiffs in *Smith* improperly joined their claims under Mississippi Rule of Civil Procedure 20, so the plaintiffs agreed to sever their claims. *Id.* at 841. The Court stated,

> [I]n ordering the agreed severance, Hinds County Circuit Judge Tomie Green proclaimed that the claims of the five remaining plaintiffs were "properly filed in the First Judicial District of Hinds County," and that "this action shall proceed as to the claims of Larry Polk." The other four plaintiffs were required to file amended complaints and obtain new civil action numbers from the

10

clerk. Specifically, Judge Green ordered that four of the plaintiffs "shall be severed from this action, and shall file amended complaints, and the Clerk is hereby ordered to assign new cause numbers for those actions reassigning those cases to the Honorable Judge Tomie T. Green."

*Id.*

¶27. The defendants in **Smith** argued that Judge Green had "improperly circumvented the random assignment of cases required by" Rule 1.05A when she ordered the four cases reassigned to her after they were given new cause numbers. *Id.* The Court, however, expressly chose not to address that issue: "[W]e decline to address issues of random assignment . . . ." *Id.* at 842. Despite this conclusion, the Court afforded Judge Green the benefit of the doubt:

> Because the suits of all five plaintiffs were originally assigned to her, and because she concluded that all five plaintiffs could properly pursue their claims in the First Judicial District of Hinds County, Judge Green thought it appropriate to retain the case of one plaintiff and order the clerk to assign her the other four.
>
> Realizing this is an issue of first impression, and giving Judge Green the benefit of the doubt (to which she is certainly entitled), *we cannot say her decision was unreasonable or without legitimate purpose. Judicial economy, alone, could explain her decision to retain five similar cases filed against the same defendant.*

*Id.* at 842 (emphasis added).

¶28. We recognize that cases are reassigned and transferred in the courts of this State. In fact, most reassignments or transfers go unchallenged as judges diligently work together, seeking "justice, uniformity, and [] efficiency of courts." *See* M.R.C.P. Order Adopting M.R.C.P. Additionally, our Rules of Evidence express similar purposes. We are to

11

"administer every proceeding fairly, eliminate unjustifiable expense and delay, . . . to the end of ascertaining the truth and securing a just determination." M.R.E. 102.

¶29. Thus, we are of the opinion that any reassignment or transfer of a case would be improper and would not be allowed to stand if it was "unreasonable or without legitimate purpose." *Smith*, 926 So. 2d at 842.

¶30. First, we are concerned by the irregularity of the reassignment order's having been signed by Judge Green, who was not the presiding judge, instead of Judge Gowan, to whom the case had been assigned. While circumstances may warrant another judge's signing an order in a case, the better practice is for the judge assigned the case to sign an order reassigning it. We also believe the better practice would be to give the parties notice and an opportunity to address reassignment in advance of any reassignment order.

¶31. Second, we are concerned that the reasons for the reassignment, which were articulated in the reassignment order, clearly contradict and are in opposition to the reasons given for the special-master order. The reassignment order clearly stated that its goal was judicial economy and efficiency. Yet, the special-master order stated,

> *The herein Court is pressed to promptly and thoughtfully dispose of litigated matters associated with the trial demands of its civil and criminal docket, as well as, its duties associated with the overall management of the circuit court.* Currently, the Court is without the personnel and resources to thoroughly and closely manage the operation of the massive discovery process believed to be forthcoming in the herein case.

(Emphasis added.)

¶32. The procedural irregularities in the entry of the reassignment order and the totality of

12

the circumstances require that we conclude the reassignment of this case by Judge Green was not based on a reasonable, legitimate, or justifiable reason. Accordingly, we vacate the reassignment order and remand this case with instructions to instructions to the Hinds County Circuit Clerk to return this case to the docket of Subdistrict 4, with Circuit Judge Faye Peterson presiding.

> ### 2. Did the circuit court abuse its discretion in appointing a special master?

¶33. Next, Safeco challenges Judge Green's appointment of a special master. We review this issue for an abuse of discretion. *Massey v. Massey*, 475 So. 2d 802, 806 (Miss. 1985) ("The reference to a master is discretionary with the trial judge . . . .").

¶34. The State filed a motion to consolidate, which included a request to appoint the same special master serving in *State Farm* also to serve as special master in this case. Like State Farm, Safeco objected to the appointment. This Court has "recognize[d] that reference to a special master without the consent of the parties is the exception and not the rule." *Lewis v. Lewis*, 54 So. 3d 216, 218 (Miss. 2011) (citing M.R.C.P. 53(c)). And any "reference without the consent of the parties would require a finding by the [trial judge] of exceptional conditions." *Id.* at 219. But just as she had done in *State Farm*, Judge Green gave little, if any, consideration to the objection.[11] Without conducting a hearing, the trial judge

---

[11] Judge Green entered the order appointing the special master *the same day* Safeco filed its objection to the State's request to appoint a special master, indicating that she gave little or no weight to the fact that Safeco had objected. Under Rule 53(c), an objection by one of the parties to the appointment of a special master triggers the requirement of finding

13

immediately entered a sweeping appointment order granting the special master judicial authority, beyond that permitted by Rule 53. After review, we find the trial court abused its discretion and, thus, vacate the order.

¶35.    The trial court's order appoints an New Orleans-based attorney[12] to serve as special master.  The primary duty assigned to him is to supervise discovery.  But the order does not limit his authority to discovery.  Although stating that the court "shall be the final arbiter of all pretrial and trial issues," the order expressly grants the special master "concurrent jurisdiction" with the trial court.  And it empowers him "to address all litigation matters." Further, the order grants the special master express authority "to participate in ex parte contact with counsel."[13] A particularly curious aspect of the ex parte provision is its

---

an "exceptional condition" exists to justify the appointment to which the parties had not consented.  M.R.C.P. 53(c).  *See also* **Lewis**, 54 So. 3d at 219.

       In **State Farm**, no party requested the appointment of a special master—Judge Green appointed one sua sponte after State Farm filed a motion to dismiss.  State Farm objected to the order, citing the fact the order failed to specify the powers being conveyed under Rule 53(d) and failed to justify the appointment under Rule 53(c).  Judge Green overruled State Farm's objection, and State Farm did not seek permission to file an interlocutory appeal.

       [12] The appointed special master is authorized to practice law in Mississippi, as required by Mississippi Rule of Civil Procedure 53(b).

       [13] Specifically, the order provides,

       IT IS FURTHER ORDERED that the Special Master and his staff be expressly given the authority to participate in ex parte contact with counsel for all parties in these proceedings as the [c]ourt views ex parte exchanges will be extremely helpful to the Special Master's ability to assist the parties and the [c]ourt in managing these proceedings much more efficiently than it would be without them.

14

authorization to maintain the secrecy of ex parte contact by excusing the special master "from the obligation of providing detailed descriptions of his activities in his Invoices and Requests for Distributions of Funds." As to compensation, the order sets the special master's compensation at $250 per hour and reimburses him for lodging and travel from the New Orleans, Louisiana, area to Mississippi.

¶36. An initial problem with the order is the broad authority it gives to the special master. The order grants the special master "concurrent jurisdiction" with the circuit court. Really, the order appoints an attorney to serve as a de facto special judge—an appointment that is unquestionably beyond the trial judge's discretionary authority under Rule 53. Judge Green's given justification for this broad delegation of judicial authority is the court's heavy docket and lack of personnel and resources to handle the case. Furthermore, in her order appointing the special master, Judge Green maintained, "[t]he parties in this case ha[d] filed numerous pretrial motions pertaining to discovery, privileged matters, arbitration and other disputed matters." But from our review of the record, this is simply not so. The reality is that there were not numerous disputed discovery or arbitration matters pending—indeed, there were none. The record does, in fact, show that the only motions pending were two motions to dismiss filed by Safeco, plus a motion to stay discovery pending the outcome of the dismissal motions. But even if these representations were true, Rule 53 is not the appropriate vehicle

15

to hand off judicial duties based on backlogged dockets and resources constraints.[14]

¶37.    Instead, to address these specific problems, Mississippi has a statutory procedure for

appointing special judges.  Mississippi Code Section 9-1-105(2) (Supp. 2018) provides,

> (2) Upon the request of . . . the senior judge of a . . . circuit court district,  . . . or upon his own motion, the Chief Justice of the Mississippi Supreme Court, with the advice and consent of a majority of the justices of the Mississippi Supreme Court, shall have the authority to appoint a special judge to serve on a temporary basis in a circuit . . . court *in the event of an* emergency or *overcrowded docket*.  It shall be the duty of any special judge so appointed to assist the court to which he is assigned in the disposition of causes so pending in such court for whatever period of time is designated by the Chief Justice. The Chief Justice, in his discretion, may appoint the special judge to hear particular cases, a particular type of case, or a particular portion of the court's docket.

(Emphasis added.)  While the appointment may be general in nature, it may also be tailored

so the special judge hears a particular case or a particular type of case.  *Id.*

¶38.    By contrast, the purpose of special masters—and the trial judge's discretionary

authority to appoint them—is more narrowly tailored.  Typically, courts utilize Rule 53

special masters to review facts, to organize information, and to give comprehensive

recommendations or reports to assist the judge in making his or her decision.  These

arrangements may certainly extend to discovery management.  But Rule 53 does not permit

---

[14] Part of the justification for the appointment is the fact the same special master has already been appointed in a similar case before the same court.  But we note the other case involves almost *thirty times more* individual homeowners insurance policies than in this case—thousands of policies as opposed to the mere 232 Safeco policies at issue in this matter and the 180 policies in the companion case, ***Liberty Mutual Insurance Co. v. State***, No. 2017-IA-01588-SCT (Miss. Aug. 22, 2019).

16

a trial judge to bring in a private attorney—over the objection of one of the parties—to serve for all intents and purposes as the trial judge. If a trial judge anticipates that a case will be too complex and time consuming, requesting the chief justice to appoint a special judge is the appropriate route. *See Massey*, 475 So. 2d at 806 (cautioning that, "[i]f it is the intent of the trial judge to appoint a special judge," and not simply a special master, "then [s]he should avail h[er]self with specificity of" the statutory procedures for obtaining a special judge).

¶39. The second abuse of discretion concerns the order's explicit authorization allowing the special master to participate in ex parte communication with counsel.

¶40. Under Canon 3B(7) of the Code of Judicial Conduct—which applies equally to special masters as it does to judges[15]—"[a] judge shall not initiate, permit, or consider ex parte communications[.]" While Canon 3B(7) makes an exception for "ex parte communications for scheduling, administrative purposes, or emergencies that do not deal with the substantive matters or issues on the merits," such ex parte communications are only allowed if "the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond." Miss. Code of Jud. Conduct, Canon 3B(7)(a)(ii).

¶41. Instead of requiring that all parties be notified of the substance of the ex parte

---

[15] A special master is considered a "judge" for these purposes. Miss. Code of Jud. Conduct, Application A.

17

communications and given an opportunity to respond, the circuit judge's order does the exact opposite. It instead takes extra measures to craft a provision aimed to ensure that any ex parte communications remain confidential. Specifically, the order excuses the special master "from the obligation of providing descriptions of his activities in his Invoices and Requests for Distribution of Funds" for the express purpose of preventing other parties from knowing ex parte communications occurred. This is a clear violation of Canon 3B(7) and is outside the bounds of Rule 53. It also violates Rule 53(a), which governs a special master's compensation. Rule 53(a) entitles a special master to "reasonable compensation for services rendered." But, here, under this concealed-billing approach, there is no way to determine if a special master's requested compensation is reasonable without knowing the particular services rendered.

¶42. The order itself acknowledges the blind-billing provision is "unusual." But we find it is more than that. Requiring both parties—one of which is the State of Mississippi—to pay an attorney in Louisiana to act as a judge, allowing either side to meet with him ex parte, and not requiring this special master to mention these meetings or even justify or detail his bill far exceeds the discretionary authority to appoint special masters under Rule 53.

¶43. For these reasons, we vacate the order appointing the special master.

¶44. **VACATED AND REMANDED.**

**RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. ISHEE, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J. KING, P.J., DISSENTS WITH SEPARATE**

18

**WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶45.   I respectfully dissent from the majority's finding that the trial court abused its discretion in case reassignment. Reasonable and legitimate grounds existed for reassignment within the sound discretion of the Hinds County Circuit Court, and I find that no abuse of that court's discretion has occurred.

¶46.   This Court consolidated three cases from Circuit Court of the First Judicial District of Hinds County for purposes of interlocutory appeal.[16] Circuit Court District Seven, comprised of Hinds County only, is a multi-judge district. The three cases initially were assigned randomly to circuit court judges under Uniform Civil Rule of Circuit and County Court Practice 1.05A. The original assignments were as follows:

   (1)    ***Safeco*** - Circuit Court Judge William Gowan

   (2)    ***Liberty Mutual*** - Senior Circuit Court Judge Tomie Green

   (3)    ***Cannon*** - Circuit Court Judge William Gowan

¶47.   ***Safeco*** and ***Liberty Mutual*** have similar factual backgrounds.[17]

---

[16](1) ***Safeco Ins. Co. of Am. v. State***, No. 2017-IA-01554-SCT (Miss. Aug. 22, 2019) (***Safeco***); (2) ***Liberty Mut. Ins. Co. v. State***, No. 2017-IA-01558-SCT (Miss. Aug. 22, 2019) (***Liberty Mutual***); (3) ***Vinod Khosla, et al., v. State***, No. 2017-IA-01637-SCT (Miss. Aug. 22, 2019) (***Cannon***). The parties refer to the third case as ***Cannon*** rather than ***Khosla*** because the original complaint in the underlying action was styled ***Hood ex rel. Mississippi v. Fred Cannon et al.***, No.: 15-CV-00017 (Hinds Cty. Circuit Court, 1st Jud. Dist., filed Jan.13, 2015) (***Cannon***).

[17]Safeco is a subsidiary of Liberty Mutual; Safeco and Liberty Mutual filed the same appellant's brief under their respective docket numbers in this Court.

¶48.    On March 29, 2017, the State filed these suits against Safeco and Liberty Mutual, alleging misadjustment of 232 homeowner-insurance claims by Safeco and 180 claims by Liberty Mutual. *Safeco* was assigned randomly to then-Circuit Judge Gowan's[18] docket; *Liberty Mutual* was assigned randomly to Senior Circuit Judge Green's docket.

¶49.    Before filing *Safeco* and *Liberty Mutual*, the State had sued Metropolitan Property and Casualty Insurance Company (Metropolitan). That case had been assigned to Judge Gowan. Safeco and Liberty Mutual emphasize that Judge Gowan had ruled against the State in *Metropolitan*—a case with pretrial issues very similar to those in *Safeco* and *Liberty Mutual*—on pretrial matters before *Safeco* and *Liberty Mutual* were filed. Safeco and Liberty Mutual point out that Judge Green had not ruled on any of the similar pretrial motions filed in the HAP cases randomly assigned to her. The first HAP case, brought against State Farm Fire & Casualty Company (State Farm), was filed on April 21, 2015.[19] Judge Green had not ruled on similar motions filed in *State Farm*, and on July 17, 2017, she appointed a special master—Bobby Harges, J.D., LLM[20]—to handle the discovery process in *State Farm*.

---

[18]Judge Gowan retired in March of 2018.

[19]***Mississippi ex rel. Hood v. State Farm Fire & Cas. Co.***, No. 1:15-cv-00221-TTG (Hinds Cty. Circuit Court, 1st Jud. Dist., filed April 21, 2015).

[20]Mr. Harges is a licensed attorney in Mississippi and Louisiana. Although criticized by the majority for residing in Louisiana, I believe that his credibility is enhanced by his relative remoteness from Mississippi politics and by the fact that he never practices before the Circuit Court of Hinds County.

¶50.    On October 13, 2017, the State filed a motion to consolidate *State Farm*, *Safeco*, and *Liberty Mutual*, and for the appointment of a special master. The motion was filed in *State Farm*, and notices of that filing were filed in *Safeco* and *Liberty Mutual*. The State moved for consolidation under Mississippi Rule of Civil Procedure 42(a) and also sought to have Special Master Harges administer *Safeco* and *Liberty Mutual* once consolidation had occurred. Both Safeco and Liberty Mutual filed objections to consolidation under their respective docket numbers.

¶51.    On October 23, 2017, Judge Green signed an order entitled "Order Reassigning Case" under the *Safeco* docket number. The order reads, in part,

> [T]his case should be reassigned to [Judge Green] on the bas[i]s of judicial economy and efficiency, and also to minimize the risk of inconsistent judicial rulings in the several cases.
>
> Pursuant to the undersigned judge's statutory authority:
>
> **IT IS THEREFORE ORDERED AND ADJUDGED** that therein in case [sic] shall be reassigned to the docket of Senior Judge Tomie Green (by agreement of Judge Bill Gowan) for all further proceedings.[21] Further, upon reassignment, the Court shall consider the appointment of Special Master Bobby Harges and the Consolidation of this case with similar cases brought by the Mississippi Attorney General.

¶52.    Also on October 23, 2017, Judge Green signed an order appointing Special Master Harges to *Safeco* and *Liberty Mutual*. The two special master appointment orders were entered into the court record on October 24 and 25, 2017, while the reassignment order was

---

[21]While the parties and the circuit court judges refer to the moving of a case from one judge's docket to another as a "reassignment," this occurrence could be called a "transfer."

entered on October 26, 2017. From these orders Safeco and Liberty Mutual petitioned this Court for interlocutory review.

¶53.　Regarding the alleged abuse of its discretion in the appointment of a special master in *Safeco* and *Liberty Mutual*, I would not vacate the special master appointment for the reasons discussed in Presiding Justice King's separate opinion, with which I concur fully. On appeal, the petitioners and the State assert several different issues. The central issue presented respecting the reassignment order may be summarized as follows:

> May trial court judges in a multi-judge district reassign cases amongst themselves?

¶54.　The majority answers that question in the affirmative: circuit judges do have the authority to reassign and transfer a case, and that reassignment does not violate the random assignment requirement of Rule 1.05A. Moreover, this Court allows trial courts to manage their own dockets, and that function firmly resides within the power of those courts.[22] The

---

[22]For example, Rule 2 of the Local Rules of the Fifteenth Circuit Court District allows the following procedure:

> Once a case is assigned to a Judge by the letter system, that Judge shall handle that case until final disposition. For good cause, a Judge may transfer a case to another Judge of the District for that Judge's handling and, upon transfer, the clerk is to add a hyphen and the letter of that Judge's Place to show the case has been transferred.

If Safeco were correct, judges in the Fifteenth Circuit Court District would be in violation of the Code of Judicial Conduct every time a case was transferred under Rule 2 of that district's local rules, which this Court has approved. Such a result should not be ascribed to the Code of Judicial Conduct inasmuch as we have legitimized intra-court reassignment or transfer as being within judicial discretion. *See also* Fifth Chancery Court

22

same is true of the federal system. *See United States v. Stone*, 411 F.2d 597, 599 (5th Cir. 1969) ("District judges may by rule, order or consent transfer cases between themselves. . . . [and] have the inherent power to transfer cases from one to another for the expeditious administration of justice." (citing 28 U.S.C.A. § 137 (West 2018))).

¶55.     The majority favorably cites our decision in *Canadian National/Illinois Central Railroad Co. v. Smith*, 926 So. 2d 839 (Miss. 2006), in which this Court recognized that trial court judges have authority to retain or assign cases without implicating Rule 1.05A. Maj. Op. at ¶¶ 26-27. Further, the majority, citing *Smith*, acknowledges that this Court gives considerable discretion to the authority of trial courts to "reassign" cases intra-docket:

> Because the suits of all five plaintiffs were originally assigned to [Judge Green], and because she concluded that all five plaintiffs could properly pursue their claims in the First Judicial District of Hinds County, Judge Green thought it appropriate to retain the case of one plaintiff and order the clerk to assign her the other four.
>
> Realizing this is an issue of first impression, and giving Judge Green the benefit of the doubt (to which she is certainly entitled), *we cannot say her decision was unreasonable or without legitimate purpose. Judicial economy, alone, could explain her decision to retain five similar cases filed against the same defendant.*

*Smith*, 926 So. 2d at 842 (emphasis added).

¶56.     While today's majority would not allow a reassignment to stand if "unreasonable or without legitimate purpose," this Court, in *Smith*, afforded Judge Green "the benefit of the

District Local Rule 14 ("A case may be transferred to another division only by agreement of the Chancellor of the divisions involved.").

23

doubt" regarding the trial court's prerogative to reassign cases. Contrary to our precedent, the majority in this case declines to give Judge Green the benefit of the doubt. Moreover, here we have detailed explanations from the judges themselves on the reasons for reassignment.

¶57.    Both Judge Green and Judge Gowan, at this Court's request, filed responses to these appeals on November 13, 2017, explaining the reasons for their actions concerning reassignment or transfer. The judges strongly defended and provided support for reassignment: *inter alia,* Judge Gowan stressed that he agreed to the reassignment "for the purposes of judicial economy, since Judge Green was assigned the earlier case and the most number of insurance cases, and in an effort to ensure that the requisite amount of attention and efficiency was maintained in this case." Judge Green additionally responded that "[a]fter the undersigned judges reviewed the files of State Farm [], Liberty [], and Safeco [], the undersigned [] agreed that judicial economy and efficiency demanded that the Court transfer/reassign Safeco from Judge Gowan to Judge Green who had already been properly assigned the State Farm and Liberty Mutual insurance cases." The trial court took these actions within the legitimate context of case management and in anticipation of consolidation. The majority, however, (as Judge Gowan found regarding Safeco's contentions), "insert[s] an intention that was completely absent from the thought-process behind the attempt to consolidate these factual[ly]-similar matters."

¶58.    Judge Green and Judge Gowan did not act inconsistently with any Mississippi law.

"Trial courts have inherent authority and duty to control their dockets for the orderly disposal of business." *Harris v. Fort Worth Steel & Mach. Co.*, 440 So. 2d 294, 296 (Miss. 1983); *see also* *Hanson v. Disotell*, 106 So. 3d 345, 347 (Miss. 2013) ("Our precedent clearly provides trial judges the 'inherent authority to dismiss cases for failure to prosecute as a means of controlling the court's docket and ensuring [expeditious] justice.'" (alteration in original) (quoting *Watson v. Lillard*, 493 So. 2d 1277, 1278 (Miss. 1986))); *Smith v. Normand Children Diversified Class Tr.*, 122 So. 3d 1234, 1238 (Miss. Ct. App. 2013) ("Trial courts in Mississippi likewise have the inherent authority to control their own dockets. . . . The decision of whether to consolidate cases remains within the sound discretion of the trial court." (internal quotation marks omitted) (citations omitted)).

¶59.    It is not suggested that judges in multi-judge districts have inherent and ultimate authority over their colleagues' dockets. I would hold that, when judges in the same district, who, acting in agreement, reassign or transfer cases between or amongst themselves, their inherent authority over their dockets empowers them to do so absent a contrary rule, controlling precedent, or statute.

¶60.    Judge Green's order reassigning *Safeco* to her docket expressly did not consolidate *Safeco*, *Liberty Mutual*, and *State Farm*: "Further, upon reassignment, the [c]ourt shall consider . . . the [c]onsolidation of this [case] with similar cases brought by the Mississippi Attorney General." But the State had moved for consolidation under Rule 42, and Judge Green and Judge Gowan explained that the reassignment was for purposes of eventual

25

consolidation. Notwithstanding that consolidation in the trial court was yet to occur, no law prohibited Judge Green and Judge Gowan from reassigning the case in the manner they did, regardless of whether consolidation came to fruition before or after the reassignment, or not at all. Moreover, the senior circuit court judge in a district has statutory authority to do as Judge Green did under Mississippi Code Section 9-7-3(5) (Rev. 2015) ("The senior judge shall have the right to assign causes and dockets . . . .").

¶61.    Although it is conceivable that one could craft principles respecting "best practices" to accomplish reassignment, any possible procedural irregularities do not preponderate against the "reasonable, legitimate, or justifiable reason" the circuit judges provided for their actions. Under these circumstances, I would uphold the order of reassignment in deference to these judges' discretion and inherent authority. Circuit Judges Green and Gowan acted within their lawful authority and in the complete absence of any nefarious or corrupt motive. Amid accusations by Safeco that somehow they were complicit in a "judge-shopping" enterprise, and at the behest of this Court, these seasoned trial judges provided reasonable explanations for the case transfer or reassignment. They supported their decisions with numerous, relevant citations. These respected jurists, possessed of more judicial experience than most members of this Court, conscientiously exercised the well-established authority the majority recognizes they could wield, and they have in nowise abused their discretion.

¶62.    I would affirm the Hinds County Circuit Court's reassignment or transfer of the instant case to Senior Judge Green's docket, and I would affirm that Court's appointment of

26

Special Master Harges with the modifications suggested by Presiding Justice King.

**KING, P.J., JOINS THIS OPINION.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶63. I join Presiding Justice Kitchens's dissent as to Part I of the majority opinion. I agree with Part II of the majority opinion only to the extent that the Court finds inappropriate and reverses the portion of the trial court's order that allows ex parte communications, and the corresponding blind billing provision. However, I do not believe that the overall appointment of a special master was an abuse of discretion; instead of reversing the appointment of a special master, I would reverse and remand the order for the trial court to reconsider the duties and authorities of the special master, and to eliminate the ex parte communications and blind billing provisions. Accordingly, I respectfully dissent. Additionally, I write further to explain my objections to any suggestion that this Court should appoint special judges to Hinds County.

*A.      Special Master*

¶64. Part II of the majority opinion opines that the entire order was "sweeping" and beyond the authority permitted by Rule 53. Maj. Op. ¶ 34. It insinuates that the order should "limit his authority to discovery." Maj. Op. ¶¶ 35, 38. It further complains that the order empowers the special master "to address all litigation matters." Maj. Op. ¶ 35. Additionally, it opines that Rule 53 does not allow appointment of a special master due to a heavy docket or lack of resources to handle a particular case. Maj. Op. ¶ 36. With all due respect, the majority's

27

interpretation of the narrow limits of Rule 53 belies both Rule 53 itself, and this Court's caselaw.

### 1. Reasons to Appoint a Special Master

¶65. The majority argues that Rule 53 does not allow a judge to appoint a special master because that judge has a crowded docket or is faced with a particular type of complex case. Yet, nothing in Rule 53 prohibits a trial judge from doing so. Rule 53 states that, when the parties do not consent to a special master, "a reference shall be made only upon a showing that some exceptional condition requires it." Miss. R. Civ. P. 53(c). This Court has held that "we will not assume that a trial judge of this state would issue an order of reference without some exceptional condition requiring it." *Massey v. Massey*, 475 So. 2d 802, 806 (Miss. 1985). While the trial court in this case did point to its heavy docket, it also justified the appointment of a special master by "the complex issues involved in this case and the numerous pre-trial and discovery disputes filed and anticipated[.]"[23] Indeed, the "complexity of modern civil litigation" is one reason attributed to the increasingly common nature of special master appointments. 2 Jeffrey Jackson et al., *Miss. Practice Series: Civil Procedure* § 26:1 (updated May 2019), Westlaw. "The rules governing civil practice in Mississippi and elsewhere are bottomed on three values: justice, speed and economy. . . . In some cases,

---

[23]The majority emphasizes the fact that not many disputes had already been filed in the case. While this is true, the court also cited that it *anticipated* numerous disputes. Part of properly preparing to manage a case is anticipating problem areas. The court had ample experience with a case of the same the nature and the counsel on both sides in that case. The court's anticipating numerous disputes based on experience is not far-fetched.

special masters can assist the court by improving the quality of fact finding through more investigation of complex issues and the lending of the master's expertise to the court." *Id.* (citing Miss. R. Civ. P. 1). Furthermore, the trial court is in the best position to determine whether complexities in a case are sufficiently exceptional to warrant reference to a special master. ***Miss. Power Co. v. Miss. Pub. Serv. Comm'n***, 135 So. 3d 887, 891 (Miss. 2014). Thus, I would find that the trial court's reasons for appointing a special master were not an abuse of discretion.

*2.     Authority of a Special Master*

¶66.   Rule 53 allows a court the discretion to grant a special master powers that are either broad or narrow in nature.

> The order of reference to the master *may* specify or limit his powers and *may* direct him to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and ***may*** fix the time and place for beginning and closing the hearing and for the filing of the master's report. Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order. He may require the production before him of evidence upon all matters embraced in the reference
> . . . .

Miss. R. Civ. P. 53(d) (emphasis added). Rule "53(d) does not require that the order specify or limit the powers of the master, but only provides that the order 'may' do so; otherwise, the powers of the master are broad." ***Massey***, 475 So. 2d at 806. Special masters have even conducted the trial on the merits. *See, e.g.*, ***Loggers, L.L.C. v. 1 Up Techs., L.L.C.***, 50 So. 3d 992, 993 (Miss. 2011). Additionally,

29

special masters have been appointed to prepare accountings, determine profits, determine partnerships rights, equitably wind-up and dissolve businesses, value business interests, investigate estate administration, hold divorce hearings and consider compliance with divorce judgment, hold contempt hearings, hold civil commitment hearings, hold bar reinstatement evidentiary hearings, reconcile conflicting land surveys, conduct factual investigations, inventory assets and debts to determine an equitable distribution of personal property, certify a church congregation's vote on whether to retain its pastor, partition property, resolve discovery disputes, and rule on pre-trial evidentiary issues.

Jackson, et al., *supra*, at § 26:1. Indeed, "a reference containing no limitations is a general reference to report on all the issues, both of law and fact, involved in the litigation." ***Banks v. Banks***, 648 So. 2d 1116, 1124 (Miss. 1994) (quoting 5A James Wm. Moore et al., *Moore's Federal Practice* Ch. 53 (2d ed. 1994)). The primary restriction on a special master is that "the court cannot . . . refer the whole case to the master for final ***decision***." ***Id.*** (quoting Moore, *supra*, at Ch. 53). The court, therefore, must decide issues and render a final decision. ***Id.*** (quoting Moore, *supra*, at Ch. 53). Further, a special master is not authorized to order parties to perform specific duties as a result of a hearing. ***Id.***

¶67. The majority relies heavily on the trial court's statement that it "retains concurrent jurisdiction with the Special Master in this case and the Court shall be final arbiter of all pretrial and trial issues." While I agree that the trial court's use of the phrase "concurrent jurisdiction" was not an optimal word choice, I disagree that, read in context, this phrase granted the full jurisdiction of the court to the special master. The trial court clarified that it was the final arbiter of all issues, and the court was to make all final decisions, as is appropriate and mandated. Rather than granting the special master the full jurisdiction of the

30

court, as the majority insinuates, this statement, while admittedly inartfully worded, is an attempt to clarify that the broad grant of authority to the special master *did not* deprive the trial court of its jurisdiction, and it reserved all final decision-making exclusively to the trial court. I would therefore conclude that the appointment of a special master, even one with broad and general powers, was not an abuse of discretion.[24] Consequently, I would reverse the portion of the trial court's order regarding ex parte contact and blind billing, and would remand the entire order for the trial court to revisit, clarify, and define the duties and authority of the special master.

¶68. The majority, with its rulings that trivialize and minimize Judge Green's ability, judgment, and findings, is micromanaging the administration of the Hinds County Circuit Court and this particular judge. The Court of Appeals has mentioned overcrowded dockets in three other counties in its 2019 opinions alone, yet this Court is not clamoring to appoint special judges and micromanage those courts. In *Sullivan v. Maddox*, the Court of Appeals noted that in Simpson County Judge Shoemake appointed a special master because he had a full calendar, as well as administrative responsibilities. *Sullivan v. Maddox*, No. 2017-CA-

---

[24]I am also concerned with the majority's inexplicable focus on the state of residence of the special master and the insinuation that this should be disqualifying, even while admitting that the special master meets the explicit qualifications of Rule 53(b). The special master was born in Mississippi, attended Mississippi State University and the University of Mississippi School of Law, taught at the University of Mississippi School of Law, is admitted to the Mississippi Bar, has published articles on Mississippi law, and has sat on the board of directors of the Mississippi Bar Alternative Dispute Resolution Section. The fact that he is currently a law professor in Louisiana is hardly disqualifying, nor does Rule 53 make the special master's state of residence a disqualifying issue.

31

00418-COA, 2019 WL 3423397 (Miss. Ct. App. July 30, 2019). This Court is also aware of other troubles in Simpson County that would contribute to congested dockets, namely the suspension of Judge Shoemake in 2016. *See Miss. Comm'n on Judicial Performance v. Shoemake*, 191 So. 3d 1211 (Miss. 2016). The Court of Appeals has also flagged overcrowded dockets as an issue (and a seemingly pervasive one) in Harrison County, which trigger speedy trial issues. *May v. State*, No. 2017-KA-01415-COA, 2019 WL 2183468 (Miss. Ct. App. May 21, 2019); *see also Parks v. State*, 228 So. 3d 853 (Miss. Ct. App. 2017). Scott County has also recently been flagged as having crowded docket problems, triggering speedy trial issues. *Ford v. State*, No. 2018-KA-00395, 2019 WL 2353432 (Miss. Ct. App. June 4, 2019). If the majority is so concerned about overcrowded dockets and the administration of justice, why, then, is it not also advocating for judges in these courts, namely Harrison County Circuit Court, Simpson County Chancery Court, and Scott County Circuit Court, to request the appointment of special judges? What is the difference between Hinds County Circuit Court and the other courts who cite overcrowded dockets? Is it a difference in personalities of the judges? Or is some other clearly distinguishing factor the difference? The failure to treat all courts citing crowded dockets equally is puzzling.

**B.**    *Special Judges*

¶69.    The majority suggests that its members may be open to the sua sponte appointment

32

of special judges to Hinds County by the chief justice of this Court.[25] Again, why the

majority is so focused on special judges in Hinds County, and Hinds County alone, is

puzzling.

¶70. I agree that this Court has constitutional responsibility for the administration of

justice, and that responsibility includes ensuring that the dockets in all courts in the state

move at a pace commensurate with ensuring justice. And I agree that Mississippi Code

Section 9-1-105 is one of the methods by which this Court may implement that responsibility.

I am not diametrically opposed to the appointment of special judges in Hinds County as a

general matter; I simply think that appointment at this juncture is premature and lacks

foundation. Section 9-1-105 gives the chief justice, with the consent of a majority of the

justices of this Court, the authority to appoint a special judge "in the event of an emergency

or overcrowded docket." Miss. Code Ann. § 9-1-105 (Rev. 2014). This Court does not have

adequate proof of either to appoint a special judge.

¶71. No true foundation exists regarding the need to appoint special judges in Hinds

County beyond reputation and statements regarding the judges being busy. This Court

decides matters according to facts shown in the records before it. *Underwood v. State*, 708

So. 2d 18, 26 (Miss. 1998). This Court does not generally engage in speculation, conjecture,

---

[25]I note the hypocrisy in disallowing Judge Green to appoint a special master in accordance with Rule 53 and our caselaw in order to move cases along, and then forcing special judges on Hinds County because they have not moved cases along to the majority's satisfaction.

supposition, or guesswork regarding the facts necessary in a case. ***Sears, Roebuck & Co. v. Learmonth***, 95 So. 3d 633, 637-39 (Miss. 2012) (Randolph, J., for the Court). We do not have accurate or reliable facts before us at this juncture to determine whether an "emergency or overcrowded docket" exists. I would be open to the consideration of such an appointment should the judges of Hinds County request such an appointment, or should facts be adduced regarding the pace of the administration of justice in Hinds County, indicating that an emergency or overcrowded docket necessitates the appointment of a special judge. I also note, should this Court eventually consider such an appointment in Hinds County due to a crowded docket, that this Court's responsibility for the administration of justice requires that we apply the same standards to all the various courts of the State.

**KITCHENS, P.J., JOINS THIS OPINION.**